CITY OF WORTHINGTON, APPELLANT, *v.* CITY OF COLUMBUS, APPELLEE.

[Cite as *Worthington v. Columbus,*
100 Ohio St.3d 103, 2003-Ohio-5099.]

(No. 2002–1106—Submitted April 30, 2003, at the Ross
County Session—Decided October 15, 2003.)

MOYER, C.J.

{¶ 1} Appellant, city of Worthington, initiated two separate actions claiming a right to exercise eminent domain over five acres of real property owned by the city of Columbus. The property is situated within the municipal corporate boundaries of Worthington and lies along the eastern edge of the Olentangy River on the boundary between Worthington and Columbus.

{¶ 2} Columbus acquired the five acres of land in 1968 as part of a 38–acre parcel. The acquisition was financed with federal funds granted on the condition that the land be used as open space. The land thereafter became known as Rush Run Park. Another Columbus park, Antrim Park, is situated directly to the north and west of Rush Run Park, within Columbus.

{¶ 3} Worthington first sought a declaratory judgment that would recognize its authority as a chartered municipal corporation to appropriate five acres of Rush Run Park. Worthington owns the Walnut Grove Cemetery, which abuts the eastern boundary of the five acres at issue, and alleged that it has an immediate need to expand the cemetery. Worthington hopes to sell grave sites on the land to the general public.

{¶ 4} In response, Columbus asserted that it had acquired the land adjacent to the cemetery for use as a public park and has maintained the land continuously for that purpose. Columbus denied that Worthington was entitled to acquire title to the property through eminent domain.

{¶ 5} Thereafter, Worthington initiated separate eminent domain proceedings in the Franklin County Court of Common Pleas by filing a petition to appropriate the five acres of property. In response, Columbus denied that Worthington possessed a legal right to take its parkland for cemetery use, asserting that Worthington's proposed use would destroy the existing public use of the land. Columbus asserted that it currently uses the property as a public park and natural area as defined in R.C. 1517.01.[1]

{¶ 6} The trial court consolidated the two actions, and each party filed a motion for summary judgment. The trial court determined that Worthington could not

---

1. R.C. 1517.01 defines "natural area" as an "area of land or water which either retains to some degree or has re-established its natural character, although it need not be completely undisturbed, or has unusual flora, fauna, geological, archeological, scenic, or similar features of scientific or educational interest."

appropriate the five acres through eminent domain and entered summary judgment in favor of Columbus.

{¶ 7} The Tenth District Court of Appeals affirmed. Its judgment is before us upon the allowance of a discretionary appeal.

{¶ 8} In 1912, the people of Ohio amended the Ohio Constitution to provide, "Municipalities shall have authority to exercise *all powers of local self-government* and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." (Emphasis added.) Section 3, Article XVIII, Ohio Constitution. Article XVIII is commonly referred to as the Home Rule Amendment.

{¶ 9} We have consistently held that the constitutional grant of "all powers of local self-government" to municipalities includes the power of eminent domain. *State ex rel. Bruestle v. Rich* (1953), 159 Ohio St. 13, 32, 50 O.O. 6, 110 N.E.2d 778. Worthington asserts a right to exercise eminent domain based solely on the power of local self-government vested in it by Section 3 of the Home Rule Amendment; it does not assert any statutory rights to employ eminent domain it may have. Cf. R.C. Chapter 719. Columbus counters that its prior and current use of the property for public purposes precludes the exercise of eminent domain by Worthington.

{¶ 10} In *Blue Ash,* this court observed: "It is a general rule, and one of long standing, that when a condemnor, to which the power of eminent domain is given by law, seeks to exercise its power with respect to property already devoted to public use, its action may be enjoined if the proposed use will either destroy the existing use or interfere with it to such an extent as is tantamount to destruction, unless the law has authorized the acquisition either expressly or by necessary implication." Id. at 351, 19 O.O.2d 274, 182 N.E.2d 557. This rule is commonly denominated the "prior public use" rule or doctrine. See, e.g., *Las Cruces v. El Paso Elec. Co.* (1998), 124 N.M. 640, 954 P.2d 72; Naiman, Judicial Balancing of Uses for Public Property: The Paramount Public Use Doctrine (1990), 17 B.C.Envtl.Affairs L.Rev. 893, 896; Arena, The Accommodation of "Occupation" and "Social Utility" in Prior Public Use Jurisprudence (1988), 137 U.Pa.L.Rev. 233.

{¶ 11} Worthington asserts that the constitutional status of home rule precludes application of the prior public use doctrine to preclude it from taking property within its boundaries through eminent domain. We disagree.

{¶ 12} In *Blue Ash,* the court applied the prior public use doctrine in a case where a city attempted to condemn property it owned outside its corporate limits pursuant to Section 4, Article XVIII, Ohio Constitution, commonly called the Utility Clause.[2] This clause vests municipalities with power to acquire property

---

2. {¶ a} Section 4, Article XVIII of the Ohio Constitution provides:

"within *or without* its corporate limits, \* \* \* by condemnation or otherwise," for the purpose of providing public utility services to its inhabitants. (Emphasis added.) *Britt v. Columbus* (1974), 38 Ohio St.2d 1, 67 O.O.2d 1, 309 N.E.2d 412, paragraph three of the syllabus.

{¶ 13} Worthington thus correctly argues that *Blue Ash* is factually distinguishable from the case at bar. *Blue Ash* involved application of the prior public use doctrine to preclude a taking where the subject property was situated outside the corporate limits of the condemning municipality. In this case, the condemning city seeks to take property located within its limits.

{¶ 14} The distinction does not further Worthington's cause. The Utility Clause grants specific authority to condemn property both within and without corporate limits. Such an express grant of power would seem to present a stronger case for disregarding the prior public use doctrine than in a case where the power to condemn is grounded in the more indirect vesting of authority as a "power of local self-government." However, the court in *Blue Ash* nevertheless employed the doctrine to enjoin a taking that would have destroyed a prior, and existing, public use.

{¶ 15} Moreover, the prior public use doctrine was subsequently applied in *Northwood v. Wood Cty. Regional Water & Sewer Dist.* (1999), 86 Ohio St.3d 92, 711 N.E.2d 1003. In that case, a municipality claimed authority to condemn property located *within* its corporate limits based on the Utility Clause. Precedent clearly supports the conclusion that the doctrine of prior public use applies in condemnation proceedings against property within and without the municipal limits of a condemning city.

{¶ 16} Further, the Utility Clause does not apply to the case at bar as it did in both *Blue Ash* and *Northwood.* Worthington does not seek to take title to part of Rush Run Park in order to provide its residents with utilities. Worthington instead asserts authority to condemn property within its corporate limits as a prerogative of self-government pursuant to Section 3, Article XVIII, Ohio Constitution. It argues that the prior public use doctrine should not be applied in these circumstances.

{¶ 17} In both *Blue Ash* and *Northwood,* however, as in the case at bar, the authority of the condemning municipality to pursue eminent domain was ground-

---

{¶ b} "Any municipality may acquire, construct, own, lease and operate *within or without its corporate limits,* any public utility the product or service of which is or is to be supplied to the municipality or its inhabitants, and may contract with others for any such product or service. The acquisition of any such public utility *may be by condemnation or otherwise,* and a municipality may acquire thereby the use of, or full title to, the property and franchise of any company or person supplying to the municipality or its inhabitants the service or produce of any such utility." (Emphasis added.)

ed in a constitutional grant of power. In contending that the precedent of *Blue Ash* and *Northwood* should not apply herein, Worthington argues that the powers of eminent domain provided by Section 3, Article XVIII are superior to the powers provided by Section 4. We discern no justification for that conclusion.

{¶ 18} Worthington effectively asks us to reevaluate the prior public use doctrine under the home-rule governmental structure established by the Ohio Constitution and to overrule long-established Ohio precedent. It argues that the theoretical justification for the prior public use doctrine does not exist where the power of eminent domain is grounded in a *constitutional* grant of authority, as the doctrine resulted from interpretation of *statutes* by which the state delegates to municipalities and other entities the eminent domain power it possesses as an incident of sovereignty. These statutes, and the prior public use doctrine itself, predate the Home Rule Amendment. Worthington argues that the power of eminent domain of a municipality flows directly from the Constitution itself and that statutory and common law cannot restrict it.

{¶ 19} It is true that the prior public use doctrine arose as the result of interpretation of statutes vesting municipalities and other public entities with the power of eminent domain. See 1A Nichols, Eminent Domain (3d Ed.2002) 2–55, Section 2.2 et seq.; *Little Miami & Columbus & Xenia RR. Cos. v. Dayton* (1872), 23 Ohio St. 510, 1872 WL 91. However, the doctrine has consistently been recognized in Ohio cases decided since adoption of the Home Rule Amendment. In addition to *Blue Ash* and *Northwood,* see in accord *Cincinnati v. Louisville & N.R. Co.* (1913), 88 Ohio St. 283, 295, 11 Ohio Law Rep. 94, 102 N.E. 951; *Akron Bd. of Edn. v. Proprietors of Akron Rural Cemetery* (1924), 110 Ohio St. 430, 442–443, 144 N.E. 113; *Richmond Hts. v. Cuyahoga Cty. Bd. of Commrs.* (1960), 112 Ohio App. 272, 83 Ohio Law Abs. 273, 11 O.O.2d 475, 166 N.E.2d 143.

{¶ 20} It is also true that the wisdom of the doctrine has been questioned and alternatives proposed. See, generally, Naiman, 17 B.C.Envtl.Affairs L.Rev. 893; Arena, 137 U.Pa.L.Rev. 233; Matteoni, The California Roadway—A More Necessary Public Use (1969), 20 Hastings L.J. 551. However, the doctrine has provided a measure of reliability in resolving eminent domain proceedings in Ohio. While hypothetical facts may be posited in which the relative value of competing uses could render application of the doctrine unreasonable, we do not find the facts of the case at bar sufficient to warrant revision of our long-established precedent.

{¶ 21} Furthermore, defining the parameters of the power of eminent domain is a judicial function. *Blue Ash v. Cincinnati* (1962), 173 Ohio St. 345, 353, 19 O.O.2d 274, 182 N.E.2d 557, citing *Giesy v. Cincinnati, Wilmington & Zanesville RR. Co.* (1854), 4 Ohio St. 308, 309, 1854 WL 81 (noting that "the courts possess full authority to determine * * * proper limits" of the power of eminent domain).

Implicit in Worthington's argument is the premise that the exercise of eminent domain pursuant to the Home Rule Amendment is beyond the purview of judicial scrutiny. We reject this premise.

{¶ 22} Accordingly, we hold that the eminent domain power of a chartered municipal corporation vested by Section 3, Article XVIII of the Ohio Constitution does not include the power to condemn property when the use proposed by the municipality will destroy its existing public use, unless the Ohio Constitution authorizes the acquisition either expressly or by necessary implication.

{¶ 23} Worthington did not contradict evidence proffered by Columbus that its proposed use of the subject property as a cemetery would destroy the existing public use of the land as an open-space park. The Ohio Constitution does not expressly or by necessary implication authorize a city to take property already used for public purposes in order to further a proprietary function like maintaining a cemetery. Worthington's claim to a right to take the property through eminent domain thus fails.

{¶ 24} The judgment of the court of appeals is affirmed.

Judgment affirmed.

RESNICK, F.E. SWEENEY, HARSHA, W. YOUNG and O'CONNOR, JJ., concur.

PFEIFER, J., dissents.

WILLIAM H. HARSHA III, J., of the Fourth Appellate District, sitting for COOK, J.

WILLIAM W. YOUNG, J., of the Twelfth Appellate District, sitting for LUNDBERG STRATTON, J.

---

**PFEIFER, J., dissenting.**

{¶ 25} Although I may well agree with the majority as to the ultimate disposition of the property at issue, I dissent. My concern is with the application of the prior public use doctrine, which yields a mechanical "first use is best use" result to every inquiry. I believe that the prior public use doctrine needs fine-tuning so that property disputes between public entities can be resolved through a reasoned weighing of alternative possible uses.

{¶ 26} The resolution of competing public uses for property should spring from the relative necessity of the competing uses. The element of the necessity of an appropriation is a part of every eminent domain case (R.C. 163.05), and that element should be paramount in a dispute between public entities. Unlike in cases between public and private entities, the condemnee should not have the burden of proof on the issue of the necessity of the taking. A condemnor should have to prove a reasonable necessity for the taking. A reasonable necessity could

be proved by demonstrating that the condemnor's use better serves the interests of the public or that the advantages to the condemnor of the taking largely exceed the disadvantages that would befall the condemnee. See 2 Lewis, A Treatment on the Law of Eminent Domain in the United States (3d Ed.1909), Section 440.

{¶ 27} I believe that the public interest in these kinds of cases is too great to let them be decided without a contemplation of what result is, in fact, best for the public. I am heartened to glean from the majority opinion that it believes that the prior public use doctrine may indeed need to be modified in the future, but just not in this case. However, I would remand this case to the trial court for a determination as to whether there is a reasonable necessity for Worthington's proposed taking.

---

Baker & Hostetler, L.L.P., David C. Levine, John H. Burtch and Michael E. Minister, for appellant.

Richard C. Pfeiffer Jr., Columbus City Attorney, Daniel W. Drake, Chief Counsel, John C. Klein III and Jennifer S. Gams, Assistant City Attorneys, for appellee.

Thompson Hine, L.L.P., Robert M. Curry and Chad D. Cooper, urging affirmance for amici curiae Five Rivers MetroParks, Preservation Park District of Delaware County, Johnny Appleseed Metropolitan Park District, Medina County Park District, Centerville–Washington Park District, Washington Township Board of Trustees (Franklin County), Mill Creek Metropolitan Park District, O.O. McIntyre Park District, Wood County Park District, MetroParks Serving Summit County, Stark County Park District, and Metropolitan Park District of the Toledo Area.