MARICH ET AL., APPELLEES, v. BOB BENNETT CONSTRUCTION COMPANY ET AL., APPELLANTS.

[Cite as *Marich v. Bob Bennett Constr. Co.,*
116 Ohio St.3d 553, 2008-Ohio-92.]

(No. 2006–1827—Submitted September 18, 2007—Decided January 17, 2008.)

---

MOYER, C.J.

I

{¶ 1} This appeal presents two issues for our review: (1) whether R.C. 5577.05 and 4513.34 take precedence over City of Norton Codified Ordinances 440.01 and (2) if so, whether a party who complied with the ordinance but not with the statutes is negligent per se for a resulting injury. For the following reasons, we hold that the statutes take precedence over the ordinance and that a holding of negligence per se is inappropriate in this case.

## II

{¶ 2} On November 8, 2002, appellant John Goss was driving a tractor-trailer on Clark Mill Road in Norton, Ohio, as part of his employment with appellant Bob Bennett Construction Company. The trailer was carrying a bulldozer, and the entire apparatus was 124 inches wide. While on Clark Mill Road, Goss stopped the tractor-trailer and began disconnecting and unloading the bulldozer. Appellee John Marich drove his vehicle into the stationary tractor-trailer.

{¶ 3} Marich and his wife, appellee Nada Marich, filed a negligence suit against Goss and the company (collectively, "Bennett") for his injuries and her loss of consortium. The Mariches subsequently filed a motion for partial summary judgment, arguing that Bennett was negligent per se for operating an oversized vehicle on public roads without a proper permit from the city of Norton. To support this motion, they cited R.C. 5577.05(A)(4), which limits to 102 inches the width of most vehicles traveling on public roads,[1] and R.C. 4513.34(A), which allows persons to apply for a permit to operate an excessively wide vehicle from either the state director of transportation or the relevant local authorities for roads under their jurisdiction. Pursuant to R.C. 4513.34(A), if an applicant demonstrates good cause, the relevant authority may issue a special written permit that authorizes the operation of an excessively wide vehicle on any highway in that jurisdiction.

{¶ 4} Because the company admitted that it had neither sought nor procured a permit from the city of Norton to operate a vehicle in excess of the statutory width limits on Clark Mill Road, the trial court granted the Mariches' motion and ruled that Bennett was negligent per se for violating R.C. 5577.05.

{¶ 5} Bennett sought reconsideration on the basis of Norton Codified Ordinances 440.01(c)(1). This ordinance purported to eliminate the permit requirement for vehicles traveling on certain roads in the municipality, including Clark Mill Road. In his deposition, the Norton police chief reinforced this point by stating that, even if Bennett had sought a permit for Clark Mill Road, he would not have issued it because of the exception in the ordinance. Given this information, the trial court ruled that this blanket exception to the permit requirement was permissible under Norton's home-rule powers and that Bennett was not negligent per se for its operation of the tractor-trailer. The case proceeded to trial, and the jury rendered its verdict in favor of Bennett.

{¶ 6} The Mariches appealed to the Court of Appeals for Summit County, which held that R.C. 5577.05 took precedence over Norton Codified Ordinance 440.01 and that Bennett was negligent per se for failing to abide by the statute.

---

1. Different limits apply to "passenger bus type vehicles" and traction engines. See R.C. 5577.05(A)(1) through (3).

Further, the court remanded the matter for a determination of whether Bennett is liable for the Mariches' injuries. We accepted Bennett's discretionary appeal of both issues.

## III

{¶ 7} Section 3, Article XVIII of the Ohio Constitution, commonly known as the "Home Rule Amendment," gives municipalities the "authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." This case requires us to determine whether Norton Codified Ordinances 440.01 is in conflict with, and therefore invalidated by, R.C. 5577.05 and 4513.34.

{¶ 8} As a preliminary matter, Bennett argues that Norton has statutory authority under R.C. 715.22, 723.01, 737.022, and 4511.07 to enact ordinances such as the one at issue. Bennett suggests that these statutes supplement the city's authority under the Home Rule Amendment, giving Norton enhanced power to control the streets within its jurisdiction. However, as we stated in *Geauga Cty. Bd. of Commrs. v. Munn Rd. Sand & Gravel* (1993), 67 Ohio St.3d 579, 621 N.E.2d 696, the power to enact ordinances comes solely from the Constitution: "While the effect of R.C. 4511.07 * * * could be viewed as very much like a grant of authority to the municipality, the municipality does not need the grant of authority because it already possesses it pursuant to its home rule powers. The power comes from the Ohio Constitution; it does *not* come from R.C. 4511.07." (Emphasis sic.) Id. at 584, 621 N.E.2d 696. We see no reason to deviate from this conclusion for the other statutes cited by Bennett. See also *Struthers v. Sokol* (1923), 108 Ohio St. 263, 140 N.E. 519, paragraph one of the syllabus.

{¶ 9} We use a three-part test to evaluate conflicts under the Home Rule Amendment. "A state statute takes precedence over a local ordinance when (1) the ordinance is in conflict with the statute, (2) the ordinance is an exercise of the police power, rather than of local self-government, and (3) the statute is a general law." *Canton v. State*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, ¶ 9. We will address these elements out of order as follows.

## A. Police power or local self-government

{¶ 10} Although the issue whether the ordinance is an exercise of local self-government or of the municipality's police power is the second element in the *Canton* test, we will consider it first: "If an allegedly conflicting city ordinance relates solely to self-government, the analysis stops, because the Constitution authorizes a municipality to exercise all powers of local self-government within its jurisdiction." *Am. Financial Servs. Assn. v. Cleveland*, 112 Ohio St.3d 170, 2006-Ohio-6043, 858 N.E.2d 776, ¶ 23.

{¶ 11} An ordinance created under the power of local self-government must relate "solely to the government and administration of the internal affairs of the municipality." *Beachwood v. Cuyahoga Cty. Bd. of Elections* (1958), 167 Ohio St. 369, 5 O.O.2d 6, 148 N.E.2d 921, paragraph one of the syllabus. Conversely, the police power allows municipalities to enact regulations only to protect the public health, safety, or morals, or the general welfare of the public. See *Downing v. Cook* (1982), 69 Ohio St.2d 149, 150, 23 O.O.3d 186, 431 N.E.2d 995. While local self-government ordinances are protected under Section 3, Article XVIII of the Ohio Constitution, police-power ordinances "must yield in the face of a general state law." *Am. Financial Servs. Assn.*, 112 Ohio St.3d 170, 2006-Ohio-6043, 858 N.E.2d 776, ¶ 23.

{¶ 12} Norton Codified Ordinances 440.01 is a part of Chapter 440, which pertains to commercial and heavy vehicles. The ordinance prohibits from city streets and highways vehicles exceeding the state load limits and describes the process by which a vehicle may be granted an exception from those limits. It sets forth the municipality's authority to issue permits to applicants for operating vehicles in excess of the dimensions specified in Norton Ordinances 440.02,[2] provides an exemption from the permit process for certain roads, including Clark Mill Road, and explains the conditions placed on issued permits. Norton Ordinances 440.01(a) through (c).

{¶ 13} Bennett argues that this ordinance falls outside the police power, relying heavily on *Froelich v. Cleveland* (1919), 99 Ohio St. 376, 124 N.E. 212, to support this point. In that case, the majority explicitly limited the police power, finding that an expansive reading could include almost every statute and would render the Home Rule Amendment an "empty shell." Id. at 388–389, 392, 124 N.E. 212. It then held that an ordinance limiting to ten tons the maximum weight of loads that may be driven on municipal streets was an exercise of local self-government, not a use of its police power. Id. at 386–387, 124 N.E. 212. In doing so, it distinguished weight regulations from such things as statewide speed regulations, which it found to be necessary to protect the safety of the public across the entire state. Id. at 386, 124 N.E. 212.

{¶ 14} However, because the court was divided, the question of what is and what is not a use of the police power was not clearly defined. In the years since *Froelich* was decided, this court has more fully defined, in a manner more applicable to this case, the police power vested in local government. In *Tolliver v. Newark* (1945), 145 Ohio St. 517, 31 O.O. 179, 62 N.E.2d 357, overruled in part on other grounds in *Fankhauser v. Mansfield* (1969), 19 Ohio St.2d 102, 110, 48

---

2. Norton Codified Ordinances 440.02 is functionally identical to R.C. 5577.05: it sets forth the same size restrictions that appear in the statute.

O.O.2d 103, 249 N.E.2d 789, we held that the regulation of traffic by the placement of stop signs is an exercise of the police power. Id. at paragraph three of the syllabus. We came to the same conclusion for an ordinance regulating truck routes throughout a city, *Niles v. Dean* (1971), 25 Ohio St.2d 284, 54 O.O.2d 392, 268 N.E.2d 275, paragraph one of the syllabus, and a zoning ordinance regulating the accessibility of off-street parking because it was directed at the "protection of pedestrians and drivers, elimination of traffic congestion and reduction of air and noise pollution," *Brown v. Cleveland* (1981), 66 Ohio St.2d 93, 96, 20 O.O.3d 88, 420 N.E.2d 103. We eventually concluded that traffic ordinances in general arise from this power. See *Linndale v. State* (1999), 85 Ohio St.3d 52, 53–54, 706 N.E.2d 1227, citing *Geauga Cty. Bd. of Commrs.*, 67 Ohio St.3d at 583, 621 N.E.2d 696. It is now clear that the regulation of traffic is an exercise of police power that relates to public health and safety as well as the general welfare of the public.

{¶ 15} Norton Codified Ordinances 440.01 regulates the types of vehicles that may drive on the public roads in that municipality. It regulates the traffic that passes through the municipality by placing size requirements on the vehicles that may be driven there. These requirements serve to protect drivers and pedestrians who might be traveling on those roads and generally affect traffic flow in the municipality. Thus the ordinance is an exercise of that jurisdiction's police power that may be invalidated if it conflicts with the general laws of this state.

B. General law

{¶ 16} Given that Norton Codified Ordinances 440.01 is an exercise of the municipality's police power, we must determine whether the statutes at issue are general laws. See *Canton*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, at ¶ 9; Section 3, Article XVIII, Ohio Constitution. We use a four-part test to determine whether a statute is a general law: "To constitute a general law for purposes of home-rule analysis, a statute must (1) be part of a statewide and comprehensive legislative enactment, (2) apply to all parts of the state alike and operate uniformly throughout the state, (3) set forth police, sanitary, or similar regulations, rather than purport only to grant or limit legislative power of a municipal corporation to set forth police, sanitary, or similar regulations, and (4) prescribe a rule of conduct upon citizens generally." *Canton* at paragraph one of the syllabus. We address the elements of this test in turn.

1. Statewide and comprehensive legislative enactment

{¶ 17} The first element requires us to determine whether the statute at issue is part of a statewide and comprehensive legislative enactment. In *Canton*, we examined R.C. 3781.184, which requires compliance with federal standards in the construction of manufactured homes and prohibits local ordinances from placing

zoning restrictions on them. *Canton*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, at ¶ 23–24. We determined that it was not a general law because the state did not have a statewide zoning scheme or a comprehensive regulation plan for manufactured homes. Id.

{¶ 18} R.C. Chapter 5577 broadly regulates the dimensions of vehicles that may travel on public highways. The chapter regulates such areas as load weights and tire width (R.C. 5577.03), maximum axle loads, wheel loads, and gross weights for a variety of vehicle types (R.C. 5577.04 through 5577.042), and maximum width, height, and length for various vehicles (R.C. 5577.05), while also providing rules to apply in certain special conditions (R.C. 5577.07 and 5577.071). Together, these statutes place restrictions on the permissible size of nearly all vehicles on every public road in the state. The broad scope of this enactment meets the statewide-and-comprehensive-legislation element.

{¶ 19} Bennett attempts to refute this point by noting that R.C. 5577.05(G) exempts from its requirements fire engines, fire trucks, and other similar vehicles, vehicles and pole trailers used to transport poles, pipes, or well-drilling equipment, and farming vehicles or machinery. It argues that such exceptions somehow prevent R.C. Chapter 5577, and the related permit sections in R.C. 4513.34, from being statewide and comprehensive pieces of legislation.

{¶ 20} We disagree. There is no requirement that a statute must be devoid of exceptions to remain statewide and comprehensive in effect. Permitting exceptions allows the General Assembly to specifically tailor the effect of laws to account for a wide range of situations. If anything, the fact that the legislature specifically decided that no load regulation was necessary for these specific vehicles further proves that the law is comprehensive; it applies to all vehicles traveling on public roads, providing restrictions on certain ones and exempting others. Given this statewide and comprehensive effect, the first element is met.

2. Applies to all parts of and operates uniformly throughout the state

{¶ 21} The second requirement for a statute to be a general law is that it must apply to all parts of the state and operate uniformly throughout it. R.C. 5577.05(A) proclaims that "[n]o vehicle shall be operated upon the public highways, streets, bridges, and culverts within the state" unless it conforms to the applicable size restrictions. The statute does not limit this regulation to certain parts of the state, nor does it provide different rules for different areas; it broadly applies to all public roads in all parts of the state.

{¶ 22} Bennett argues that the permit exception in R.C. 4513.34 undermines this uniform operation and statewide application. They suggest, citing the analysis of R.C. 3781.184 in *Canton* to support their argument, that by allowing local authorities to control the permit process for the public streets in their

jurisdictions, the General Assembly established a system that will inherently vary to some degree from jurisdiction to jurisdiction.

{¶ 23} However, we found that the statute in *Canton* was not a general law, because it would "effectively apply only in older areas of the state, i.e., cities where residential areas no longer have effective deed restrictions or no longer have active homeowner associations." *Canton*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, at ¶ 30.

{¶ 24} No such differential application is present here. R.C. 4513.34(A) requires all municipalities to create a written permit-application process, grant permits only for good cause shown, and issue permits in writing before an individual is permitted to drive certain types of vehicles on public roads in that jurisdiction. This statutory framework applies to all parts of the state without exception, and the basic process is a uniform one.

{¶ 25} Bennett's main concern appears to address the potential for differences of opinion regarding what constitutes good cause for the granting of a permit under R.C. 4513.34. We do not doubt that different municipalities may interpret that phrase differently. However, mere differences in the interpretation and application of the statutory language are not enough to prevent a statute from applying to all parts of the state and operating uniformly throughout it. A large number of cases before this court pertain to differences of opinion over statutory language. If statutes failed this element every time a disagreement over language occurred, there would be very few general laws remaining in the state.

{¶ 26} The fact remains that the statute creates a process that applies throughout the state uniformly. While municipalities may differ in their interpretations of ideas such as good cause, the same basic requirements must be met to drive a vehicle exceeding the statutory limits on all public roads in Ohio. Thus, the second element is met.

3. Sets forth a police, sanitary, or similar regulation

{¶ 27} The third element is that the statute must set forth police, sanitary, or similar regulations, instead of merely granting or limiting a municipality's power to create such regulations. As we stated in Section III.A., the regulation of traffic is a use of the police power. See, e.g., *Linndale*, 85 Ohio St.3d at 54, 706 N.E.2d 1227, citing *Geauga Cty. Bd. of Commrs.*, 67 Ohio St.3d at 583, 621 N.E.2d 696. Given the explicit restriction of the flow of traffic throughout the state, R.C. 5577.05 is an exercise of the police power. Further, although R.C. 4513.34 requires municipalities to participate in the permit-review process, it neither grants nor limits their legislative power to set forth separate police-power regulations. Thus, the third element is met.

### 4. Prescribes a rule of conduct upon citizens generally

{¶ 28} The final element is that the statute must prescribe a rule of conduct upon citizens generally. The rule of conduct created by these statutes is clear: no one may operate a vehicle exceeding the statutorily noted dimensions on a public road in this state unless he or she complies with the permit process. This rule applies to all citizens generally; it does not exempt any part of the public from its purview.

{¶ 29} Bennett argues that the law provides different lengths, widths, and weights for different types of vehicles, suggesting that this somehow changes the general application of the law. We are not persuaded. While different vehicles may have to meet different size requirements, these distinctions do not affect how the law applies to citizens. Thus, the fourth element of the test is met.

### C. Conflict between the statutes and the ordinance

{¶ 30} Finally, to evaluate the conflict element of the *Canton* test, we must determine "whether the ordinance permits or licenses that which the statute forbids and prohibits, and vice versa." *Struthers*, 108 Ohio St. 263, 140 N.E. 519, at paragraph two of the syllabus. To properly evaluate this element, we must closely examine both the statutes and the ordinance.

{¶ 31} R.C. 5577.05(A) broadly states that "[n]o vehicle shall be operated upon the public highways, streets, bridges, and culverts within the state, whose dimensions exceed those specified in this section." Of the dimensions listed in the statute, only the 102–inch–width limit in R.C. 5577.05(B)(5) is relevant to this case. This broad mandate is softened by the permit exception in R.C. 4513.34(A), which specifically states: "[L]ocal authorities with respect to highways under their jurisdiction, *upon application in writing and for good cause shown, may issue a special permit in writing* authorizing the applicant to operate or move a vehicle * * * of a size * * * exceeding the maximum specified in sections 5577.01 to 5577.09 of the Revised Code * * * upon any highway under the jurisdiction of the authority granting the permit." (Emphasis added.)

{¶ 32} Under this statutory framework, a person may not drive a vehicle that is more than 102 inches wide on a public road in this state unless he or she has (1) applied for a permit in writing from the relevant jurisdiction, (2) demonstrated good cause to support such a permit, and (3) received a written permit that authorizes the conduct. R.C. 5577.05(B)(5); R.C. 4513.34(A).

{¶ 33} Norton Codified Ordinance 440.01(C)(1) eliminates this permit process for certain roads: "No person shall operate a vehicle exceeding a size as specified in Section 440.02 * * * upon any street or highway in the Municipality other than the following streets and highways: * * * Clark Mill Road." Thus, a person wishing to operate a vehicle more than 102 inches wide on the named roads need

not apply for a permit, demonstrate good cause to support such a permit, or have a written copy of a permit authorizing the conduct.

{¶ 34} The conflict between these sections is clear. Norton Codified Ordinances 440.01 permits persons to operate excessively wide vehicles on certain roads without engaging in the statutorily mandated permit process and without demonstrating good cause for the exception. While R.C. 5577.05 and 4513.34 prohibit such traffic without a permit, Norton Codified Ordinances 440.01(c)(1) explicitly permits it. Such a plain conflict under the *Struthers* framework satisfies the second element of the *Canton* test.

D. Conclusion

{¶ 35} Because Norton Codified Ordinances 440.01, which is an exercise of the municipality's police power, conflicts with R.C. 5577.05 and 4513.34, which are general laws of the state, it is void.

IV

{¶ 36} Given this holding, it is clear that Bennett failed to comply with the only applicable laws regarding the width of vehicles traveling on public roads, R.C. 5577.05 and 4513.34. After reaching the same conclusion on the first issue, the court of appeals determined that Bennett was negligent per se for violating the standard of care in those statutes.

{¶ 37} The court of appeals noted that this result appeared inequitable, since Norton Codified Ordinances 440.01 essentially excused the failure to procure a permit for Clark Mill Road at the time the conduct occurred. However, it felt "constrained to apply the law regardless of the impact upon either party" and remanded the matter to the trial court for a determination of liability. Bennett argues that persons should not be held negligent per se when they complied with an ordinance that a court later deems to be in conflict with the general laws of the state.

{¶ 38} It is settled law that "[w]here a legislative enactment imposes upon any person a specific duty for the protection of others," the failure to perform that duty is negligence per se. *Eisenhuth v. Moneyhon* (1954), 161 Ohio St. 367, 53 O.O. 274, 119 N.E.2d 440, paragraph two of the syllabus. In this case, R.C. 5577.05 imposed such a duty on Bennett, specifically not to drive a vehicle exceeding 102 inches on a public road without a permit issued in accordance with R.C. 4513.34. Bennett failed to procure such a permit before driving a vehicle in excess of the statutory width. This conduct would normally be considered negligence per se, and Bennett would be liable for any injuries it proximately caused. See *Sikora v. Wenzel* (2000), 88 Ohio St.3d 493, 496–497, 727 N.E.2d 1277.

{¶ 39} However, negligence per se may be "excused" in certain situations: "Negligence per se is * * * different from strict liability, in that a negligence-per-se violation will not preclude defenses and excuses, unless the statute clearly contemplates such a result." *Robinson v. Bates,* 112 Ohio St.3d 17, 2006-Ohio-6362, 857 N.E.2d 1195, ¶ 23, citing *Sikora,* 88 Ohio St.3d at 497, 727 N.E.2d 1277. Further, "[m]ost statutes are construed to require that the actor take reasonable diligence and care to comply, and if after such diligence and care the actor is unable to comply, the violation will ordinarily be excused." *Robinson* at ¶ 23, citing Restatement of the Law 2d, Torts (1965) 38, Section 288A, Comment g.

{¶ 40} In this case, Bennett procured a permit pursuant to R.C. 5577.05 and 4513.34 to operate its vehicle on state roads. While it is true that it did not seek such a permit for Clark Mill Road, it failed to do so only because Norton Codified Ordinances 440.01 stated that a permit was unnecessary. As the Norton police chief noted in his deposition, the city did not even issue local permits, because the ordinance made them irrelevant for Clark Mill Road.

{¶ 41} It is clear from these facts that Bennett exercised reasonable diligence and care in attempting to comply with the law. The company procured a state permit for the state roads on which it was traveling and failed to seek one for Clark Mill Road only because Norton Codified Ordinances 440.01 specifically exempted that road. Had Bennett sought such a permit, it would have been told that no permits were being issued for that road. Despite its diligence and care, Bennett was unable to comply with the statutes through no fault of its own. We therefore reverse the judgment of the court of appeals on this issue and hold that Bennett is excused from being held negligent per se.

V

{¶ 42} R.C. 5577.05 and 4513.34 take precedence over Norton Codified Ordinances 440.01, invalidating it as a matter of law. Therefore, we affirm the judgment of the court of appeals on that issue. However, in view of our holding that Bennett's conduct does not meet the test for negligence per se, we reverse the judgment of the court of appeals on that issue and reinstate the jury's verdict finding Bennett not liable for the Mariches' injuries.

Judgment affirmed in part
and reversed in part.

PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

———————

Amer Cunningham Co., L.P.A., Jack Morrison Jr., and Thomas R. Houlihan, for appellees.

Baker, Dublikar, Beck, Wiley & Mathews and Ralph F. Dublikar, for appellants.

Marc Dann, Attorney General, Elise Porter, Acting Solicitor General, Stephen P. Carney, Deputy Solicitor, and Michael L. Stokes, Assistant Solicitor, urging affirmance on the preemption issue for amicus curiae, Attorney General of Ohio.