CITY OF DUBLIN, Appellant and Cross–Appellee,

v.

The STATE of Ohio et al., Appellees and Cross–Appellants.

[Cite as *Dublin v. State*, 181 Ohio App.3d 384, 2009-Ohio-1102.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 08AP–586.

Decided March 12, 2009.

386

Schottenstein, Zox & Dunn Co., L.P.A., John P. Gilligan, James E. Davidson, Stephen J. Smith and Steven D. Forry, for appellant and cross-appellee.

Richard Cordray, Attorney General, and Sharon A. Jennings, Pearl M. Chin, and James R. Foley, Assistant Attorneys General, for appellees and cross-appellants.

TYACK, Judge.

{¶ 1} The Home Rule Amendment to the Ohio Constitution guarantees sovereignty to local cities and municipalities throughout the state to the extent that each has its own power of local self-government, which includes the right to adopt and enforce local police, sanitary, and other similar regulations that do not conflict with state law. In 2005, the General Assembly passed H.B. 175, which sought to establish a residential building code for homes built within Ohio. Before 2005, Ohio had no such building code in place. The city of Dublin is a relatively affluent suburb of Columbus, Ohio, which has been overseeing and regulating residential home construction since 1980. During those past three decades, Dublin has established a relatively high standard for its own residential structures. At issue here are Dublin's local ordinances requiring homes built within Dublin to have higher ceilings and lower staircase slope than what is required by the state code.

{¶ 2} On April 23, 2007, Dublin filed a declaratory judgment action against the State of Ohio Board of Building Standards, challenging the application of portions of H.B. 175 that differ from Dublin's local building code as being in violation of the Home Rule Amendment. In granting the state's motion for summary judgment, the trial court found that Dublin's local ordinances were not protected by the Home Rule Amendment because the ordinances were an exercise of the city's "police power," and they conflicted with the state statutes, which the court determined were "general laws." This appeal ensued. Although at first glance, Dublin's ordinances might appear to be a valid exercise of local self-government, the Supreme Court of Ohio has set forth a very stringent analysis that controls our review. Using that analysis, we are required to hold that the local ordinances at issue are not protected by the Home Rule Amendment.

{¶ 3} Both parties are appealing the judgment of the trial court. We will address the state's cross-appeal after first addressing the city of Dublin's five assigned errors:

[I.] The trial court erred by failing to find as a matter of law that the Dublin code is enacted pursuant to Dublin's power of local self-government, not its police power, and failing to grant summary judgment to Dublin on that basis.

[II.] The trial court erred as a matter of law in denying summary judgment to Dublin and in granting summary judgment to defendants on the basis that the state code of Ohio (the "state code") is a general law as that term is used in the Home Rule Amendment to the Ohio Constitution.

[III.] The trial court abused its discretion by failing to exclude the affidavit of Steven Regoli submitted in support of defendants' motion for summary judgment.

[IV.] The trial court erred as a matter of law in denying summary judgment to Dublin and in granting summary judgment to defendants on the basis that R.C. 3781.10(A)(2) and 3781.01(B)-(C) do not unconstitutionally usurp judicial authority.

[V.] The trial court erred as a matter of law in denying summary judgment to Dublin and in granting summary judgment to defendants on the basis that the certification requirement of H.B. 175 does not violate the Home Rule Amendment.

{¶ 4} We review the appropriateness of granting a motion for summary judgment de novo, using the same standard used by the trial court. *Boroff v. Meijer Stores Ltd. Partnership,* 10th Dist. No. 06AP–1150, 2007-Ohio-1495, 2007 WL 944309, ¶ 7; *Smiddy v. Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 30 OBR 78, 506 N.E.2d 212. Under Civ.R. 56(C), summary judgment is appropriate when, after construing the evidence most strongly in favor of the nonmoving party, (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion—that conclusion being adverse to the nonmoving party. *Boroff,* at ¶ 6, citing *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201.

{¶ 5} Prior to 1912, cities and other municipal corporations in Ohio had no powers of self-government other than those that were expressly granted by the legislature. *Cincinnati v. Correll* (1943), 141 Ohio St. 535, 539, 26 O.O. 116, 49 N.E.2d 412. This changed with the adoption of the Home Rule Amendment, which provides:

Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws.

Section 3, Article XVIII, Ohio Constitution.

{¶ 6} Through the years, there has been much litigation over the meaning of this section and the meaning of its various terms. See Baldwin's Ohio Revised Code Annotated (2004), Editor's Comment to Section 3, Article XVIII, Ohio Constitution; see also *Fitzgerald v. Cleveland* (1913), 88 Ohio St. 338, 360, 103 N.E. 512; *Canton v. Whitman* (1975), 44 Ohio St.2d 62, 66, 73 O.O.2d 285, 337 N.E.2d 766; *Worthington v. Columbus,* 100 Ohio St.3d 103, 2003-Ohio-5099, 796 N.E.2d 920; *Ohioans for Concealed Carry, Inc. v. Clyde,* 120 Ohio St.3d 96, 2008-Ohio-4605, 896 N.E.2d 967. The Ohio Supreme Court eventually devised a three-pronged test to determine whether a local ordinance is entitled to home-rule protection. See *Am. Fin. Servs. Assn. v. Cleveland,* 112 Ohio St.3d 170, 2006-Ohio-6043, 858 N.E.2d 776, at ¶ 23–24; *Ohio Assn. of Private Detective Agencies,*

*Inc. v. N. Olmsted* (1992), 65 Ohio St.3d 242, 244–245, 602 N.E.2d 1147, citing *Auxter v. Toledo* (1962), 173 Ohio St. 444, 20 O.O.2d 71, 183 N.E.2d 920.

{¶ 7} The first step in home-rule analysis is to determine whether the local ordinance conflicts with the state statute. *Canton v. State,* 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, at ¶ 9; cf. *Ohioans for Concealed Carry,* 120 Ohio St.3d 96, 2008-Ohio-4605, 896 N.E.2d 967, at ¶ 26 (referring to this determination as the final step of the home-rule analysis). If there is no conflict between the ordinance and state law, no further inquiry is needed.

{¶ 8} If the local ordinance allows conduct prohibited by the state statute, there is a conflict. See id., quoting *Struthers v. Sokol* (1923), 108 Ohio St. 263, 140 N.E. 519. Similarly, if the local ordinance prohibits conduct that is allowed by the state statute, there is also a conflict. Id.; *Fondessy Ents., Inc. v. Oregon* (1986), 23 Ohio St.3d 213, 217, 23 OBR 372, 492 N.E.2d 797.

{¶ 9} If the ordinance at issue does conflict with a state statute, the next step in home-rule analysis is to determine whether the ordinance involves an exercise of local self-government, or is an exercise of local "police power." *Canton,* 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, at ¶ 9; cf. *Ohioans for Concealed Carry,* 120 Ohio St.3d 96, 2008-Ohio-4605, 896 N.E.2d 967, at ¶ 24.

{¶ 10} If the local ordinance does conflict, and the ordinance is an exercise of the police power, the next step is to determine whether the state statute is a "general law." *Canton,* 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, at ¶ 9; cf. *Ohioans for Concealed Carry,* 120 Ohio St.3d 96, 2008-Ohio-4605, 896 N.E.2d 967, at ¶ 25. "General laws" are laws enacted by the General Assembly and are intended to have a statewide effect and to impose rules of conduct on Ohio citizens generally. *W. Jefferson v. Robinson* (1965), 1 Ohio St.2d 113, 118, 30 O.O.2d 474, 205 N.E.2d 382; *Leis v. Cleveland Ry. Co.* (1920), 101 Ohio St. 162, 166–167, 128 N.E. 73. Determining whether the statute is a general law requires, itself, a lengthy discussion, which is another reason it makes sense to perform this step last in the home-rule analysis.

{¶ 11} In *Canton,* the court set forth a four-part test to determine whether a state statute is a general law:

> To constitute a general law for purposes of home-rule analysis, a statute must (1) be part of a statewide and comprehensive legislative enactment, (2) apply to all parts of the state alike and operate uniformly throughout the state, (3) set forth police, sanitary, or similar regulations, rather than purport only to grant or limit legislative power of a municipal corporation to set forth police, sanitary,

or similar regulations, and (4) prescribe a rule of conduct upon citizens generally.

Id. at syllabus.

{¶ 12} We note that in this case, Dublin is challenging the trial court's determination only as to the second and third prongs of the home-rule analysis test. Although it argued in the trial court that the state statute merely prescribes the minimum standards for Ohio's residential building code, Dublin has apparently abandoned this argument by not briefing it.

{¶ 13} In the first assigned error, Dublin challenges the trial court's finding that implementing its own local, residential building ordinance is an exercise of Dublin's police power. The trial court noted that neither party presented a persuasive argument "that the regulation of residential construction is the exercise of a municipality's police power or an exercise of its power of local self-government." Citing no case law or statutory authority to support its decision, the trial court found that it "is of the opinion that the regulation of residential construction is *clearly* an exercise of a municipality's police power."

{¶ 14} Although the Supreme Court of Ohio has not provided a precise definition of "police power" in the context of the Home Rule Amendment, the court has described the term to mean "the right and duty of the government to provide for the common welfare of the governed." *State v. Martin* (1958), 168 Ohio St. 37, 40, 5 O.O.2d 293, 151 N.E.2d 7. Our United States Supreme Court described "police power" as a state's authority that "springs from [its] obligation * * * to protect its citizens and provide for the safety and good order of society." *Panhandle E. Pipe Line Co. v. State Hwy. Comm. of Kansas* (1935), 294 U.S. 613, 622, 55 S.Ct. 563, 79 L.Ed. 1090.

{¶ 15} The closest that the Supreme Court of Ohio came to defining "police power" within the home-rule analysis context was in *Cincinnati v. Correll*, 141 Ohio St. 535, 26 O.O. 116, 49 N.E.2d 412, in which the court held, "A municipal ordinance limiting and fixing the hours during which a barber shop may remain open for business with the public is not a valid exercise of the police power." Id. at paragraph two of the syllabus. In this case, the court struck down the local ordinance, but did so on the grounds that the ordinance was arbitrary and capricious. See id. at 542, 26 O.O. 116, 49 N.E.2d 412. Thus, it is unclear whether the court found that the Cincinnati ordinance regulating barber-shop hours was not an exercise of the police power at all or whether it was an exercise of the police power that was silly.

{¶ 16} More recently, however, the court has held that zoning-type regulations are considered an exercise of police power. See *Marich v. Bob Bennett Constr. Co.*, 116 Ohio St.3d 553, 2008-Ohio-92, 880 N.E.2d 906, at ¶ 12 (holding that an

ordinance regulating the size and load of commercial vehicles is an exercise of police power); see also *Canton*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, at ¶ 10 (noting that a local ordinance prohibiting manufactured homes is an exercise of the police power); *In re Decertification of Eastlake* (1981), 66 Ohio St.2d 363, 365, 20 O.O.3d 327, 422 N.E.2d 598 (holding that when local building ordinances are more strict than state statutes, they are in conflict and are superseded by the state statutes); *Garcia v. Siffrin Residential Assn.* (1980), 63 Ohio St.2d 259, 270, 17 O.O.3d 167, 407 N.E.2d 1369 (holding that zoning ordinances are an exercise of the police power) (overruled on other grounds).

{¶ 17} The Dublin ordinance at issue relates to stair and ceiling height in the construction of residential homes. Also, the local ordinance is stricter than the state statute. Thus, these facts are similar to those in *In re Decertification of Eastlake*. Given that similarity in facts, and the court's recent decision in *Marich*, in which the court held that local ordinances that regulated commercial vehicle traffic were an exercise of the police power, we cannot hold otherwise. We must hold that Dublin's ordinances are an exercise of the police power. The first assignment of error is overruled.

{¶ 18} The second assignment of error challenges the trial court's finding that the Ohio state building code is a general law. This determination is governed by *Canton*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963. Given the similarities in this case to *In re Decertification of Eastlake*, we cannot hold that the state statutes at issue (building code) are not general laws:

> To allow local authorities to impose higher or different standards * * * would defeat the avowed purpose of the state building code to encourage standardization of construction * * *. Standardization of industrialized units, as described in R.C. Chapter 3781, necessarily precludes imposition of local requirements [that] conflict with the practices approved for statewide use. This is not the case with public buildings not using factory produced modules as the basic unit of construction. In those cases, the statutes do provide minimum standards only, and local authorities may impose higher standards consistent with local ordinances. * * * [A] standard of construction is necessary to effectuate the legislative intent to encourage use of this type of construction throughout Ohio.

Id. at 367–368, 20 O.O.3d 327, 422 N.E.2d 598.

{¶ 19} Dublin's chief argument that the state's residential building code is not a general law rests on the fact that the building code cannot and will not be enforced uniformly throughout the state, because there is no state agency to enforce it. Essentially, what Dublin is saying is that because not all towns and municipalities have local building inspectors and departments to enforce *any* kind of building code, the state code does not apply uniformly; thus, it cannot be a general law for purposes of home-rule analysis. The state argues that H.B. 175

"applies to all builders in the State of Ohio" and "creates a process for the coordination of that code with local codes, creates an advisory committee to oversee that process," and provides criminal penalties for its violation.

{¶ 20} The state also argues that Dublin's ordinance creates a situation of commercial impracticability for contractors and builders, which is precisely the issue addressed in *Eastlake*.

{¶ 21} Given the case law that controls these facts, we cannot hold other than that H.B. 175 is a general law for purposes of home-rule analysis. The statute applies to all builders throughout the state and therefore meets the first two prongs of the test announced in *Canton*. We have already said that the ordinance is an exercise of the police power, which satisfies the third prong of the *Canton* test. And the final prong—whether the statute prescribes a rule of conduct, which applies generally to all citizens—is also satisfied by the fact that the law applies to all builders of residential homes throughout the state. We therefore overrule the second assigned error.

{¶ 22} Based on the foregoing determinations, the third assignment of error is moot. Furthermore, the trial court stated that it did not base its decision on Steven Regoli's affidavit. We therefore cannot conclude that the trial court abused its discretion in failing to strike the affidavit. As both parties concede, this case was and is about legal issues and determinations, not facts. Thus, the affidavit of one expert witness could not have had a cognizable impact on the outcome of the case, and whether it relies on inadmissible hearsay is of little concern here.

{¶ 23} In the fourth assigned error, Dublin argues that R.C. 3781.10(A)(2) and 3781.01(B) and (C) unconstitutionally usurp judicial authority because they allow the Ohio Board of Building Standards to determine, initially, whether local ordinances conflict with H.B. 175. Dublin argues that this determination is exclusively a judicial function, which cannot be delegated to any state agency.

{¶ 24} "Th[e] Home Rule authority can only be limited under very specific circumstances—where a *court* determines that a city's exercise of its police powers conflicts with a general law of the State." (Emphasis sic.) Although H.B. 175 does allow the board to make an initial determination regarding conflicts between local building codes and state code, this authority is limited by judicial review. The board does not have any final say as to whether there is a conflict. Administrative and executive agencies routinely interpret and apply statutes. This arrangement does not violate the separation-of-powers doctrine, nor does it usurp judicial authority.

{¶ 25} The fourth assignment of error is overruled.

■ {¶ 26} The fifth assigned error concerns H.B. 175's certification procedure, which regulates the way that localities such as Dublin hire and retain building inspectors and operate their respective code enforcement divisions. Dublin argues that operating a residential building department is exclusively the power of local self-government, which is protected from state interference by the Home Rule Amendment. See *Am. Fin. Servs. Assn.*, 112 Ohio St.3d 170, 2006-Ohio-6043, 858 N.E.2d 776, at ¶ 23 ("If an allegedly conflicting city ordinance relates solely to self-government, the analysis stops, because the [Ohio] Constitution authorizes a municipality to exercise all powers of local self-government within its jurisdiction"). Dublin's reliance on this case in support of its argument that H.B. 175 is unconstitutional is misplaced, because its application is limited to whether the local ordinance is permissible; *Am. Fin. Servs. Assn.* speaks nothing about whether the state statute must be struck down.

{¶ 27} It is true that the certification requirement in H.B. 175 appears to infringe upon Dublin's sovereign power of local self-government insofar as operating its building department is concerned. But without the certification requirement, the legislature's intent in enacting a statewide residential building code cannot come to fruition. Furthermore, not only must we presume the legislature's actions constitutional, *State ex rel. Ohio Civ. Serv. Emp. Assn., AFSCME, Local 11, AFL–CIO v. State Emp. Relations Bd.*, 104 Ohio St.3d 122, 2004-Ohio-6363, 818 N.E.2d 688, ¶ 27, we must also interpret those legislative actions so as to give each provision meaning. *Carter v. Div. of Water, Youngstown* (1946), 146 Ohio St. 203, 207, 32 O.O. 184, 65 N.E.2d 63.

{¶ 28} Dublin also cites the Supreme Court of Ohio's decision in *Froelich v. Cleveland* (1919), 99 Ohio St. 376, 124 N.E. 212, which cautioned that failure to allow a city to govern its own internal affairs would render the Home Rule Amendment nothing but an "empty shell." Id. at 392, 124 N.E. 212. Perhaps the Supreme Court of Ohio has crafted enough exceptions to the Home Rule Amendment that all that is left is an empty shell of what the law once was intended to be. The Supreme Court of Ohio, however, is the final arbiter of interpreting the Ohio Constitution, and we are bound to follow any such interpretation. The fifth assignment of error is overruled.

■ {¶ 29} We now turn to the state's cross-appeal, which contains a single assignment of error:

The court erred in granting plaintiff's motion for summary judgment, and denying defendants' motion for summary judgment on plaintiffs claim related to Dublin Code 150.021.

{¶ 30} Although the trial court ruled against Dublin in principle, as to ceiling height and stair height/depth, the trial court did find that a portion of Dublin's

residential building code was permissible. This part, Dublin Code Section 150.021, concerned electrical specifications only, and the trial court determined that because the state code did not purport to regulate these types of specifications, Dublin's code could not conflict with it. Because this issue was also decided on summary judgment, we review it de novo, as above.

{¶ 31} Dublin Code Section 150.021 requires that all homes have a minimum 200–amp service, with dedicated 20–amp circuits for refrigerators and alternative circuits for adjacent outlets in kitchens. Dublin enacted this code section because it determined that home owners were systematically buying electrical appliances that used more energy than those from past generations. Today's high-end refrigerators are much larger, more akin to commercial refrigerators, and these are becoming commonplace in Dublin homes. Because these refrigerators use more power than their predecessors, there has to be enough power to operate them—and at the same time, send power to range hoods, ovens, powerful microwaves, and toaster ovens, many of which are convection-type ovens these days, as well as any other smaller appliances, such as televisions and blenders/mixers, not to mention lighting.

{¶ 32} The state has two arguments in opposition: first, that Ohio state law impliedly prohibits Dublin from enacting a stricter electrical code than the National Electric Code ("NEC") (promulgated by the National Fire Protection Association); and second, that Dublin's electrical requirements are not economically feasible.

{¶ 33} The state lacks standing to challenge Dublin's code for economic feasibility.

{¶ 34} We have already noted that the test for determining whether a local ordinance conflicts with a state statute is whether the local ordinance allows conduct prohibited by the state statute (or vice versa). See, e.g., *Fondessy*, 23 Ohio St.3d at 217, 23 OBR 372, 492 N.E.2d 797; *Struthers*, 108 Ohio St. at 263, 140 N.E. 519. The state argues, however, that this test is not comprehensive and that we must consider where there is a conflict by implication. The Ohio Supreme Court addressed this issue recently in *Mendenhall v. Akron*, 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d 255, ¶ 31.

Although on occasion a state statute and municipal ordinance will directly contradict each other, and thereby make a conflict analysis simple and direct, that is not always the case. It is in the context of more nuanced cases that the concept of "conflict by implication" has arisen. Rather than an independent test for identifying a conflict, conflict by implication is a subset of the *Struthers* analysis and recognizes that sometimes a municipal ordinance will indirectly prohibit what a state statute permits or vice versa.

{¶ 35} To determine whether a conflict by implication exists, we examine whether the General Assembly intended for the state statute to control a particular subject exclusively. Id. at ¶ 32, citing *Cincinnati v. Baskin,* 112 Ohio St.3d 279, 2006-Ohio-6422, 859 N.E.2d 514, ¶ 23. Here, the General Assembly could not have intended to control the subject of electrical regulations exclusively because there is no state statute that provides any such regulations. The state's argument is, essentially, that Ohio recognizes the National Electric Code as its own regulations for that field, and because Dublin's electrical regulations are slightly stricter than those promulgated by the NEC, Dublin's code conflicts with the state of Ohio's code. This argument has no merit because the NEC is not a state statute, and it was not promulgated by the General Assembly.

{¶ 36} Further evidence that the General Assembly did not intend to legislate in the area of electrical regulations is found in R.C. 3781.10(A)(2), which provides that municipalities are free to enact local ordinances that differ from the state residential building code so long as those provisions are not addressed by the state code. Compare that with R.C. 3781.108, which is referenced in R.C. 3781.10, and provides specific regulations with regard to fire-prevention devices:

> Every building constructed * * * with floors used for human occupancy located more than seventy-five feet in height above the lowest level of fire department vehicle access, shall have a fire suppression system installed and in operation in conformity with the rules of the board of building standards adopted pursuant to section 3781.10 of the Revised Code.

R.C. 3781.108(A).

{¶ 37} This demonstrates the General Assembly's clear intent to legislate specific requirements regarding fire-prevention devices. The state has failed to demonstrate that the legislature had a similar intent with regard to the subject matter in Dublin's electrical code.

{¶ 38} Finally, the state's argument that Dublin's electrical code conflicts with what the General Assembly intended to legislate must fail because R.C. 3781.10 specifically authorizes local towns to set their own regulations when the statute is silent. Thus, it is difficult to infer that the legislature intended to have enacted legislation covering all aspects of building codes. If it had so intended, there would be no gaps in the state code and no reason to state explicitly that towns are free to fill in those gaps on their own.

{¶ 39} We therefore agree with the trial court to the extent that the state has failed to show that Dublin's electrical regulations conflict with any state statute. Accordingly, we overrule the state's sole assignment of error as to the cross-appeal.

{¶ 40} Having overruled all assignments of error in the appeal and cross-appeal, we affirm the judgment of the trial court.

Judgment affirmed.

BROWN, J., concurs in judgment only.

SADLER, J, concurs in part and dissents in part.

BROWN, Judge, concurring in judgment only.

{¶ 41} Based only upon an analysis of the factors as set forth in *Canton v. Whitman* (1975), 44 Ohio St.2d 62, 73 O.O.2d 285, 337 N.E.2d 766, I reluctantly concur in judgment only.

SADLER, Judge, concurring in part and dissenting in part.

{¶ 42} Being unable to join the majority's disposition of Dublin's second assignment of error, I must respectfully concur in part and dissent in part.

{¶ 43} The basis for my disagreement is that I do not believe that the statutory scheme in question is a general law for purposes of the Home Rule Amendment. That test requires that we consider (1) whether the statute is part of a statewide and comprehensive legislative enactment; (2) whether it applies to all parts of the state alike and operates uniformly throughout the state; (3) whether the statute sets forth police, sanitary, or similar regulations, rather than purports to grant or limit the legislative power of a municipality to set forth police, sanitary, or similar regulations; and (4) whether the statute prescribes a rule of conduct on citizens generally. *Marich v. Bob Bennett Constr. Co.*, 116 Ohio St.3d 553, 2008-Ohio-92, 880 N.E.2d 906, ¶ 16. The majority opinion focuses entirely on Dublin's argument regarding the statute's uniform operation throughout the state and does not address the remaining portions of the test.

{¶ 44} I believe that the statutory scheme setting forth the state's building code fails the general-law test because it merely purports to limit the ability of municipalities to adopt and enforce building-code provisions that conflict with the state code. R.C. 3781.01(C)(2)(a) invalidates a conflicting local building code when "the regulation is not necessary to protect the health or safety of the persons within the local governing authority's jurisdiction." The application of this provision places a burden on a local jurisdiction such as Dublin, which wants to impose building standards that it believes are stricter and safer than the provisions of the state code, to prove that the stricter standard is necessary to protect the health or safety of the citizens of Dublin. I believe this provision merely purports to limit the ability of local jurisdictions to make their own determinations regarding local police, sanitary, or similar regulations.

{¶ 45} The Supreme Court of Ohio has stated that when applying the third part of the general-law test, a statute that prohibits a municipality from exercising its home-rule powers must serve an overriding statewide interest. *Clermont Environmental Reclamation Co. v. Wiederhold* (1982), 2 Ohio St.3d 44, 2 OBR 587, 442 N.E.2d 1278. See also *Canton v. State,* 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963. Promotion of health and safety would clearly be an overriding statewide interest; however, invalidation of a local regulation based on a determination that the regulation is not necessary to protect health or safety does not actually serve that interest, as would be the case if the statute called for invalidation of a regulation based on a determination that the proposed regulation harmed, rather than promoted, public health or safety. The state has not identified any other compelling statewide interest that would justify limiting the ability of local jurisdictions to set forth local police, sanitary, or other such regulations.

{¶ 46} For the above stated reasons, I would sustain Dublin's second assignment of error and overrule the remainder of the city's assignments of error as moot. I concur in overruling the state's cross-assignment of error.