CITY OF TOLEDO, Appellee,

v.

BEATTY, Appellant.

[Cite as *Toledo v. Beatty,* 169 Ohio App.3d 502, 2006-Ohio-4638.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–05–1319.

Decided Sept. 1, 2006.

John T. Madigan, Acting Law Director, and Daniel Pilrose, Jr., Assistant City Prosecutor, for appellee.

William V. Stephenson, for appellant.

Jim Petro, Attorney General, and Holly J. Hunt, Assistant Attorney General, for amicus curiae Attorney General Jim Petro.

_____

HANDWORK, Judge.

{¶ 1} This case is before the court on appeal from the judgment of the Toledo Municipal Court that denied appellant's motion to dismiss and found appellant, Bruce Beatty, guilty of violating a city of Toledo regulation prohibiting carrying a firearm in a city park, a minor misdemeanor. For the reasons that follow, we affirm the decision of the trial court.

{¶ 2} On April 8, 2004, Ohio's revised law on carrying a concealed weapon became effective. R.C. 2923.125 provides the process and requirements for obtaining a license to carry a concealed handgun. R.C. 2923.126(A) provides that, "[e]xcept as provided in divisions (B) and (C) of this section, a licensee who has been issued a license under section 2923.125 or 2923.1213 of the Revised Code may carry a concealed handgun anywhere in this state if the licensee also carries a valid license and valid identification when the licensee is in actual possession of a concealed handgun." The exceptions listed in R.C. 2923.126(B) and (C) are as follows:

{¶ 3} "(B) A valid license issued under section 2923.125 or 2923.1213 of the Revised Code does not authorize the licensee to carry a concealed handgun in any manner prohibited under division (B) of section 2923.12 of the Revised Code or in any manner prohibited under section 2923.16 of the Revised Code. A valid license does not authorize the licensee to carry a concealed handgun into any of the following places:

{¶ 4} "(1) A police station, sheriff's office, or state highway patrol station, premises controlled by the bureau of criminal identification and investigation, a state correctional institution, jail, workhouse, or other detention facility, an airport passenger terminal, or an institution that is maintained, operated, managed, and governed pursuant to division (A) of section 5119.02 of the Revised Code or division (A)(1) of section 5123.03 of the Revised Code;

{¶ 5} "(2) A school safety zone, in violation of section 2923.122 of the Revised Code;

{¶ 6} "(3) A courthouse or another building or structure in which a courtroom is located, in violation of section 2923.123 of the Revised Code;

{¶ 7} "(4) Any room or open air arena in which liquor is being dispensed in premises for which a D permit has been issued under Chapter 4303. of the Revised Code, in violation of section 2923.121 of the Revised Code;

{¶ 8} "(5) Any premises owned or leased by any public or private college, university, or other institution of higher education, unless the handgun is in a locked motor vehicle or the licensee is in the immediate process of placing the handgun in a locked motor vehicle;

{¶ 9} "(6) Any church, synagogue, mosque, or other place of worship, unless the church, synagogue, mosque, or other place of worship posts or permits otherwise;

{¶ 10} "(7) A child day-care center, a type A family day-care home, a type B family day-care home, or a type C family day-care home, except that this division does not prohibit a licensee who resides in a type A family day-care home, a type B family day-care home, or a type C family day-care home from carrying a concealed handgun at any time in any part of the home that is not dedicated or used for day-care purposes, or from carrying a concealed handgun in a part of the home that is dedicated or used for day-care purposes at any time during which no children, other than children of that licensee, are in the home;

{¶ 11} "(8) An aircraft that is in, or intended for operation in, foreign air transportation, interstate air transportation, intrastate air transportation, or the transportation of mail by aircraft;

{¶ 12} "(9) Any building that is owned by this state or any political subdivision of this state, and all portions of any building that is not owned by any governmental entity listed in this division but that is leased by such a governmental entity listed in this division;

{¶ 13} "(10) A place in which federal law prohibits the carrying of handguns.

{¶ 14} "(C)(1) Nothing in this section shall negate or restrict a rule, policy, or practice of a private employer that is not a private college, university, or other institution of higher education concerning or prohibiting the presence of firearms on the private employer's premises or property, including motor vehicles owned by the private employer. Nothing in this section shall require a private employer of that nature to adopt a rule, policy, or practice concerning or prohibiting the presence of firearms on the private employer's premises or property, including motor vehicles owned by the private employer.

{¶ 15} " * * *

{¶ 16} "(3) The owner or person in control of private land or premises, and a private person or entity leasing land or premises owned by the state, the United States, or a political subdivision of the state or the United States, may post a sign in a conspicuous location on that land or on those premises prohibiting persons

from carrying firearms or concealed firearms on or onto that land or those premises. A person who knowingly violates a posted prohibition of that nature is guilty of criminal trespass in violation of division (A)(4) of section 2911.21 of the Revised Code and is guilty of a misdemeanor of the fourth degree."

{¶ 17} Toledo Municipal Code ("TMC") section 131.02 confers authority on the Director of Parks, Recreation and Forestry ("the director") to promulgate rules and regulations regarding the use of city-owned parks and/or recreation facilities. Any rules and regulations created thereunder have the same effect as the ordinances of the city. According to TMC 131.99, anyone who violates any rule or regulation adopted under TMC 131.02, for which there is no other penalty provided, is guilty of a minor misdemeanor.

{¶ 18} In 1996, rule number 18 ("Rule 18") was adopted by the director regarding the carrying of weapons within city parks. Rule 18 states:

{¶ 19} "All City of Toledo Parks

{¶ 20} "1. It shall be unlawful:

{¶ 21} "a) for any person, except laws enforcement officers, to carry firearms of any description, air or gas gun, sling shot, bow and arrow or other missile throwing device, missiles, corrosive substances or volatile materials within or adjacent to any City park.

{¶ 22} " * * *

{¶ 23} "e) for any persons, except law enforcement officers in the line of duty, to have or carry any gun, pistol, switchblade, hunting knife, dagger, metal knuckles, chain, slingshot, blowgun, paint gun, nunchakus and other martial art weapons, any dangerous lethal instrument, harmful solid, liquid, aqueous effervescent, or gaseous substance or other dangerous weapon on or about his (her) person while within or adjacent to a City park.

{¶ 24} "These regulations are hereby established to aid in the utilization of all city of Toledo parks for the purpose of maintaining order and for the public safety of those participants within said parks and shall be effective on or after October 1, 1996."

{¶ 25} On April 9, 2005, appellant was cited for carrying a firearm in a Toledo city park, in violation of TMC 131.02 and Rule 18. At all times, appellant was properly and lawfully licensed by the state of Ohio to carry a concealed handgun and was in compliance with all legal requirements for a concealed-handgun licensee. Knowing the city's rule against possessing a firearm in the city parks, appellant entered into and remained on the premises of a city park with a loaded and concealed handgun. Upon being approached by a police officer, appellant disclosed that he was a concealed-handgun licensee and surrendered his handgun

upon request, pursuant to and in full compliance with state law. Appellant was issued a citation for violating Rule 18, a minor misdemeanor, and his handgun was returned to him.

{¶ 26} Appellant filed a motion to dismiss his charge on the basis that Rule 18 was unenforceable as it was in conflict with the general law of this state. The city responded that Rule 18 was an exercise of local self-government, impacted no persons outside the border of the city of Toledo, and was therefore not in conflict with the general laws of Ohio. Even if Rule 18 was an exercise of police power, the city asserted that it was not in conflict with any general state law.

{¶ 27} In denying appellant's motion to dismiss, the trial court held that Rule 18 "does not expressly forbid that which the state law permits." The court also held that Rule 18 was "nothing more than the City's attempt at local policing and regulation of its parks" and, therefore, it was within the city's authority to establish such rules. The trial court further found that R.C. 2923.126 did not state that the list of restricted locations where a licensee could not carry a concealed weapon was exhaustive, thereby allowing the city to promulgate its own restrictions. Following a trial to the bench, appellant was convicted of a minor misdemeanor, in violation of TMC 131.02 and Rule 18, and ordered to pay court costs.

{¶ 28} Appellant appeals the decision of the trial court and raises the following sole assignment of error on appeal:

{¶ 29} "It was reversible error for the trial court to fail to find the city ordinance prohibiting concealed carry in a city park to be in conflict with the state concealed carry statute authorizing concealed carry anywhere not specifically proscribed by said statute. It was further reversible error for the trial court to fail to find the state law to be a general law and to fail to apply state preemption provisions against the conflicting city ordinance. The trial court thus erred in finding appellant guilty of the city ordinance prohibiting concealed carry in a city park."

{¶ 30} Section 3, Article XVIII of the Ohio Constitution, referred to as the home-rule amendment, states that "[m]unicipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general law." Therefore, a municipality has "full and complete political power in all matters of 'local self-government.'" *Perrysburg v. Ridgway* (1923), 108 Ohio St. 245, 255, 140 N.E. 595. However, a municipality's exercise of police powers cannot be in conflict with any general law of Ohio. *Rispo Realty & Dev. Co. v. Parma* (1990), 55 Ohio St.3d 101, 102–103, 564 N.E.2d 425.

{¶ 31} At issue in this case is whether Rule 18 is preempted by R.C. 2923.126. In order to determine this, we must employ a three-part analysis:

{¶ 32} "A state statute takes precedence over a local ordinance when (1) the ordinance is in conflict with the statute, (2) the ordinance is an exercise of the police power, rather than of local self-government, and (3) the statute is a general law." *Canton v. State*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, at ¶ 9.

{¶ 33} In determining whether an ordinance is in conflict with a statute, the Ohio Supreme Court has stated:

{¶ 34} "No real conflict can exist unless the ordinance declares something to be right which the state law declares to be wrong, or vice versa. There can be no conflict unless one authority grants a permit or license to do an act which is forbidden or prohibited by the other." *Struthers v. Sokol* (1923), 108 Ohio St. 263, 268, 140 N.E. 519.

{¶ 35} In this case, the city argues that Rule 18 is not in conflict with state statutes concerning the licensing and carrying of concealed handguns because Rule 18 is merely a municipal ordinance enacted to regulate its local parks and "in no way attempts to regulate the licensing of carrying concealed weapons." As such, the city argues that Rule 18 does not forbid that which R.C. 2923.125 or 2923.126 permit. Additionally, the city argues that because "private employer," as referenced in R.C. 2923.126(C)(1), is not defined, and the city employs numerous employees to operate its parks, the city is free to enforce ordinances prohibiting the carrying of weapons in its parks.

{¶ 36} R.C. 2923.126(A) states that a properly licensed person "may carry a concealed handgun *anywhere* in this state," except where prohibited by R.C. 2923.126(B) or (C). Municipally owned parks is not one of the listed locations where a licensee is prohibited from carrying a concealed handgun. See R.C. 2923.126(B) and (C). We are also unpersuaded by the city's argument that it would qualify as a "private employer," thereby enabling it to prohibit the carrying of concealed handguns in city parks, pursuant to R.C. 2923.126(C)(1). Because R.C. 2923.126(A) permits a properly licensed person to carry a concealed handgun anywhere in the state, and city parks are not one of the prohibited locations listed in R.C. 2923.126(B), we find that Rule 18 prohibits that which R.C. 2923.126 permits. Accordingly, we find that Rule 18 is in conflict with state law.

{¶ 37} We must next determine whether Rule 18 is an exercise of local self-government or an exercise of police power. In determining whether an issue is one of local self-government, the Ohio Supreme Court in *Cleveland Elec. Illum. Co. v. Painesville* (1968), 15 Ohio St.2d 125, 129, 44 O.O.2d 121, 239 N.E.2d 75, set forth the following:

{¶ 38} "The test as to matters of local self-government is set forth in the opinion of *Beachwood v. [Bd.] of Elections of Cuyahoga [Cty.]* (1958), 167 Ohio St. 369, 371 [5 O.O.2d 6, 148 N.E.2d 921]:

{¶ 39} " 'To determine whether legislation is such as falls within the area of local self-government, the result of such legislation or the result of the proceedings thereunder must be considered. If the result affects only the municipality itself, with no extraterritorial effects, the subject is clearly within the power of local self-government and is a matter for the determination of the municipality. However, if the result is not so confined it becomes a matter for the General Assembly.'

{¶ 40} "Thus, even if there is a matter of local concern involved, if the regulation of the subject matter affects the general public of the state as a whole more than it does the local inhabitants the matter passes from what was a matter for local government to a matter of general state interest.

{¶ 41} "As was said in the opinion in *State, ex rel. McElroy v. Akron* (1962), 193 [173] Ohio St. 189, 192 [19 O.O.2d 3, 181 N.E.2d 26]:

{¶ 42} " 'Due to our changing society, many things which were once considered a matter of purely local concern and subject strictly to local regulation, if any, have now become a matter of statewide concern, creating the necessity for statewide control.' "

{¶ 43} The city argues that Rule 18 is a matter of local self-government because it solely concerns the regulation of city parks and has no effect on the possession or use of weapons in any other place. The city asserts that according to *McDonald v. Columbus* (1967), 12 Ohio App.2d 150, 41 O.O.2d 228, 231 N.E.2d 319, provisions for parks and recreational facilities were found to be an exercise of the power of local self-government and not an exercise of the municipality's police power.

{¶ 44} The city is correct that the improvement, protection, and preservation of public grounds, parks, park entrances, free recreation centers, and boulevards has been found to be a matter of local self-government. See *McDonald*. We note, however, that, in reaching its determination, the court in *McDonald* found that pursuant to the revised code, a municipality is specifically granted the authority to acquire, improve, protect, and preserve its park lands, thereby making it a matter of local self-government.

{¶ 45} In this case, Rule 18 does not concern the improvement, protection, or preservation of the city's park lands. Rather, Rule 18 is an attempt to prohibit the carrying of weapons, concealed or not, within or adjacent to its city parks, and imposes a penalty for violations of the rule. The Ohio Supreme Court has held that a statutory scheme prohibiting the carrying of concealed weapons is an

exercise of police power. *Klein v. Leis,* 99 Ohio St.3d 537, 2003-Ohio-4779, 795 N.E.2d 633, ¶ 13. Additionally, we find that Rule 18 affects more than just the residents of the city. Regardless of their origin, any person traveling within a city park would be subject to the city's park rules and penalties. In fact, in this case, appellant is not a city of Toledo resident. Based on the foregoing, we find that Rule 18, which was promulgated "for the purpose of maintaining order and for the public safety of those participants within said park," is an exercise of police power.

{¶ 46} Finally, we must determine whether R.C. 2923.126, with which Rule 18 is in conflict, is a general law. In order to constitute a general law for purposes of the home-rule analysis, a statute must satisfy each of the following: It must "(1) be part of a statewide and comprehensive legislative enactment, (2) apply to all parts of the state alike and operate uniformly throughout the state, (3) set forth police, sanitary, or similar regulations, rather than purport only to grant or limit legislative power of a municipal corporation to set forth police, sanitary, or similar regulations, and (4) prescribe a rule of conduct upon citizens generally." *Canton v. State,* 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, at syllabus. Because R.C. 2923.126 fails to meet all of these conditions, we hold that it is not a general law and, as such, must yield to the city's park regulation regarding the carrying of weapons in or adjacent to the city's parks.

{¶ 47} In considering Ohio's concealed-handgun law as a whole, we find that it is part of a statewide and comprehensive legislative plan to license and regulate the carrying of a concealed weapon within the state; sets forth police or similar regulations, rather than purporting only to limit a municipal corporation's legislative power to set forth police regulations; and prescribes a rule of conduct upon citizens generally. However, R.C. 2923.126 does not operate uniformly throughout the state.

{¶ 48} The intention of the General Assembly was "to ensure uniformity throughout the state regarding the qualifications for a person to hold a license to carry a concealed handgun and the authority granted to a person holding a license of that nature." Section 9, 2004 Am.Sub.H.B. 12. R.C. 2923.126, however, permits a private employer to have its own rule, policy, or practice regarding "the presence of firearms on the private employer's premises or property, including motor vehicles owned by the private employer." R.C. 2923.126 also allows owners or persons in control of private land or premises, and private persons or entities leasing government owned land or premises, to post signs and prohibit "persons from carrying firearms or concealed firearms on or onto that land or those premises."

{¶ 49} We find that the exception created by R.C. 2923.126(C) is remarkably similar to the exception the Ohio Supreme Court was faced with in *Canton.* In

*Canton*, the state had implemented a statutory scheme with the goal of fostering more affordable housing across the state. However, the statute contained an exception that stated:

{¶ 50} "This section does not prohibit a private landowner from incorporating a restrictive covenant in a deed, prohibiting the inclusion on the conveyed land of manufactured homes."

{¶ 51} Finding that this restriction caused the statutory scheme not to have uniform operation, the Ohio Supreme Court held as follows:

{¶ 52} "The state argues that the restrictive covenant language of R.C. 3781.184(D) neither creates nor destroys homeowner rights. Moreover, the state contends that on its face, the statute and its exception apply to the entire state of Ohio. Yet, the practical effect of the legislation and common sense tell us that enterprising developers can use deed restrictions to prohibit placement of manufactured homes in developments due to aesthetics, neighborhood character, and home valuation concerns, whether real or imagined.

{¶ 53} " 'The requirement of uniform operation throughout the state of laws of a general nature does not forbid different treatment of various classes or types of citizens, but does prohibit nonuniform classification if such be arbitrary, unreasonable or capricious.' *Garcia [v. Siffrin Residential Assn.* (1980)], 63 Ohio St.2d 259, 272 [17 O.O.3d 167, 407 N.E.2d 1369], citing *Miller v. Korns* (1923), 107 Ohio St. 287 [140 N.E. 773]. Because of the exception contained in R.C. 3781.184(D), R.C. 3781.184(C) will have very little, if any, impact in areas of development having effective deed restrictions or active homeowner associations. Instead, the statute will effectively apply only in older areas of the state, i.e., cities where residential areas no longer have effective deed restrictions or no longer have active homeowner associations. Because we find that R.C. 3781.184(D) permits that which the statute prohibits, we find that it is inconsistent with the statute's stated purpose, i.e., to encourage placement of affordable manufactured housing units across the state. Thus, we hold that R.C. 3781.184(C) and (D) do not have uniform application to all citizens of the state, and as such are not general laws." *Canton* at ¶ 29–30.

{¶ 54} Similar to the exception in *Canton*, R.C. 2923.126(C) creates a situation in which the permission granted by R.C. 2923.126(A) can be taken away arbitrarily, unreasonably, or capriciously by any private employer or land owner/occupier. Whereas R.C. 2923.126(B) uniformly prohibits a person from carrying a concealed handgun in certain defined areas, R.C. 2923.126(C) allows the decision whether to allow a properly licensed person to carry a concealed weapon on private property up to the individual employers, owners, or occupiers of land. This arbitrary prohibition on the carrying of concealed handguns will create disparate rules and regulations regarding where a properly licensed person can lawfully carry a

concealed handgun within the state. Because we find that R.C. 2923.126(C) prohibits that which R.C. 2923.126(A) permits, we find that R.C. 2923.126(C) is inconsistent with the statute's stated purpose, i.e., to ensure uniformity throughout the state regarding the authority granted to a person holding a license to carry a concealed handgun. Accordingly, we find that R.C. 2923.126(A) does not have uniform application to all citizens of the state, and therefore is not a general law.

{¶ 55} Appellant, however, argues that the state preempted the field of law concerning concealed handguns and prohibited municipalities from adopting or continuing any ordinance that is in conflict with the state statutes, including any ordinance that attempts to restrict the places where a person possessing a valid license may carry a concealed handgun. See Section 9, 2004 Am.Sub.H.B. 12. We find, however, that it is a clear violation of the home-rule amendment for the General Assembly to attempt to limit and preempt all authority of a municipality regarding the regulation of concealed handguns within its jurisdiction. See *Am. Fin. Servs. Assn. v. Toledo,* 161 Ohio App.3d 477, 2005-Ohio-2943, 830 N.E.2d 1233, ¶ 44.

{¶ 56} Based upon the foregoing, we find that there is no general law in this state with which the city's Rule 18 is in conflict. Thus, Rule 18 is enforceable within the city. We therefore find that appellant's sole assignment of error is not well taken.

{¶ 57} On consideration whereof, this court finds that appellant was not prejudiced or prevented from having a fair trial, and the judgment of the Toledo Municipal Court is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.

Judgment affirmed.

SINGER, P.J., concurs.

PARISH, J., dissents.

PARISH, Judge, dissenting.

{¶ 58} I respectfully dissent.

{¶ 59} The Ohio Supreme Court has defined a general law as one that (1) is a part of a statewide, comprehensive legislative enactment, (2) applies to all parts of the state alike and operates uniformly throughout its borders, (3) sets forth police, sanitary, or similar regulations, and (4) prescribes a rule of conduct upon citizens generally. *Canton v. State,* 95 Ohio St.3d 149, 2002-Ohio-2005, 766

N.E.2d 963, at syllabus. The majority writes that R.C. 2923.126 does not meet these requirements and is therefore not a general law. I simply cannot agree.

{¶ 60} The majority concedes that R.C. 2923.126 meets the requirements found in (1), (3), and (4) above, but suggests that it is not a general law because it does not apply to all parts of the state alike or that it does not operate uniformly throughout the state. This conclusion ignores the clear intent of the legislature.

{¶ 61} The statute precisely delineates those limited public locations where concealed weapons are forbidden. Those places not on the list are not subject to the statute. Shortly after the bill's enactment, an amendment was proposed to modify the language expressly expanding the list of areas where concealed weapons are forbidden to include parks and recreation areas. The legislature did not adopt this amendment. The failure to adopt an amendment containing a parks provision constitutes compelling indicia that the exclusion of parks or recreation facilities was not an oversight. It was a conscious decision evincing legislative intent to exclude park property from the exceptions to the statute. Now the majority exercises legislative power from the bench by substituting its judgment for that of our elected representatives. Such an action constitutes an unwarranted judicial intervention.

{¶ 62} Given the legislative history, the majority's actions create a conflict between the statute's provisions, undermining both legislative intent and the actual provisions of R.C. 2923.126(A). It will enable every city, town, village, township, or county within the state to render the statute void by merely enacting a farther-reaching local ordinance. Further, in declaring that R.C. 2923.126 is not a general law, the majority opens Pandora's Box. If R.C. 2923.126 is not a general law, then dozens if not hundreds of other state statutes are also not general laws, and local governments can change them at will. Thus, the majority's action will serve only to promote uncertainty in the law.

{¶ 63} The majority's reliance on *Canton* is unwarranted. At issue in *Canton* were statutory zoning provisions designed to promote affordable housing throughout the state. The statute *contained a loophole* that would have allowed developers to simply "opt-out" of its provisions by instituting certain restrictive covenants. This would have allowed developers to include such covenants in deeds to secure higher land values. Thus, the statute did not apply equally to all persons. The majority argues that because R.C. 2923.126 contains language of a similar nature, it should be invalidated as well.

{¶ 64} I cannot agree. Statutory zoning matters do not pertain to issues of state police power such as R.C. 2923.126(A). Common sense dictates that *Canton* is fundamentally distinguishable from this case. The legislature has greater latitude in delineating prohibited activities on matters of police power, and have elected to exercise their authority under R.C. 2923.126(A).

{¶ 65} The majority's contention is that the statute does not apply uniformly across the state because it allows a private individual to prohibit concealed firearms on his property. That conclusion is flawed. The language does not allow private property owners to "opt-out" of the provisions of the statute. It furnishes *all* private owners the equal ability to choose to prohibit concealed weapons on their property. Each private property owner has the choice to prohibit firearms or not. R.C. 2923.126 applies to all parts of the state and operates uniformly. It is a general law as defined by the Ohio Supreme Court.

{¶ 66} The goal of R.C. 2923.126 is to protect law-abiding citizens who legally elect to carry a firearm. The right to bear arms, guaranteed in the Second Amendment, is one of the fundamental rights this country was built upon. Except where a statute prohibits, law-abiding citizens may exercise this right in public places. Under R.C. 2923.126, where the public area has not been expressly included in the statute, subjecting a law-abiding individual to criminal sanctions for carrying a firearm is inappropriate.

{¶ 67} Accordingly, I would reverse the judgment of the trial court and find appellant's assignment of error well taken.