OHIOANS FOR CONCEALED CARRY, INC. ET AL., APPELLEES,
*v.* CITY OF CLYDE ET AL., APPELLANTS.

[Cite as *Ohioans for Concealed Carry, Inc. v. Clyde,*
120 Ohio St.3d 96, 2008-Ohio-4605.]

(No. 2007–0960—Submitted April 9, 2008—Decided September 18, 2008.)

O'DONNELL, J.

{¶ 1} The issue presented in this case concerns whether Clyde City Ordinance No. 2004–41, which prohibits licensed handgun owners from carrying concealed handguns in Clyde city parks, is a valid exercise of the municipality's home-rule power according to Section 3, Article XVIII, of the Ohio Constitution. Because the ordinance is an exercise of the municipality's police power that conflicts with a general law, the ordinance is unconstitutional. Accordingly, we affirm the judgment of the court of appeals.

### H.B. 12

{¶ 2} In January 2004, the General Assembly enacted Am.Sub.H.B. No. 12. Effective in April 2004, the bill created a licensing procedure for handgun owners in Ohio. See R.C. 2923.125. This case does not implicate the licensing procedure itself, but instead involves a municipality's ability to regulate handgun possession on its own property by persons possessing a valid permit to carry a concealed handgun.

{¶ 3} Specifically, this matter requires review of R.C. 2923.126(A), which provides that a licensed handgun owner "may carry a concealed handgun anywhere in this state," except as provided in R.C. 2923.126(B) and (C).

{¶ 4} R.C. 2923.126(B) contains a list of exceptions to this right and sets forth specific locations where a licensed handgun owner may not carry a concealed handgun:

{¶ 5} "(B) A valid license issued under section 2923.125 or 2923.1213 of the Revised Code does not authorize the licensee to carry a concealed handgun in any manner prohibited under division (B) of section 2923.12 of the Revised Code or in any manner prohibited under section 2923.16 of the Revised Code. A valid

license does not authorize the licensee to carry a concealed handgun into any of the following places:

{¶ 6} "(1) A police station, sheriff's office, or state highway patrol station, premises controlled by the bureau of criminal identification and investigation, a state correctional institution, jail, workhouse, or other detention facility, an airport passenger terminal, or an institution that is maintained, operated, managed, and governed pursuant to division (A) of section 5119.02 of the Revised Code or division (A)(1) of section 5123.03 of the Revised Code;

{¶ 7} "(2) A school safety zone, in violation of section 2923.122 of the Revised Code;

{¶ 8} "(3) A courthouse or another building or structure in which a courtroom is located, in violation of section 2923.123 of the Revised Code;

{¶ 9} "(4) Any room or open air arena in which liquor is being dispensed in premises for which a D permit has been issued under Chapter 4303. of the Revised Code, in violation of section 2923.121 of the Revised Code;

{¶ 10} "(5) Any premises owned or leased by any public or private college, university, or other institution of higher education, unless the handgun is in a locked motor vehicle or the licensee is in the immediate process of placing the handgun in a locked motor vehicle;

{¶ 11} "(6) Any church, synagogue, mosque, or other place of worship, unless the church, synagogue, mosque, or other place of worship posts or permits otherwise;

{¶ 12} "(7) A child day-care center, a type A family day-care home, a type B family day-care home, or a type C family day-care home, except that this division does not prohibit a licensee who resides in a type A family day-care home, a type B family day-care home, or a type C family day-care home from carrying a concealed handgun at any time in any part of the home that is not dedicated or used for day-care purposes, or from carrying a concealed handgun in a part of the home that is dedicated or used for day-care purposes at any time during which no children, other than children of that licensee, are in the home;

{¶ 13} "(8) An aircraft that is in, or intended for operation in, foreign air transportation, interstate air transportation, intrastate air transportation, or the transportation of mail by aircraft;

{¶ 14} "(9) Any building that is owned by this state or any political subdivision of this state, and all portions of any building that is not owned by any governmental entity listed in this division but that is leased by such a governmental entity listed in this division;

{¶ 15} "(10) A place in which federal law prohibits the carrying of handguns."

{¶ 16} Furthermore, R.C. 2923.126(C)(1) and (C)(3) allow private employers and landowners to prohibit gun possession on their property as they deem fit. Thus, the law provides a right for license holders to carry concealed handguns anywhere in the state subject to several express exceptions that apply universally throughout the state, and further subject to the directives of private employers and property owners, who are authorized to prohibit handguns.

{¶ 17} The General Assembly went even further, however, providing in an uncodified portion of H.B. 12 that "[n]o municipal corporation may adopt or continue in existence any ordinance * * * that attempts to restrict the places where a person possessing a valid license to carry a concealed handgun may carry a handgun concealed." H.B. 12, Section 9, 150 Ohio Laws, Part II, 3390.

{¶ 18} Shortly after H.B. 12 took effect, the city of Clyde passed Ordinance 2004–41. That ordinance provides: "No person located within the confines of any City Park shall knowingly carry or have, on or about his person or readily to hand, any deadly weapon, irrespective of whether such person has been issued a license to carry a concealed handgun pursuant to Ohio R.C. 2923.125 or pursuant to a comparable provision of the law of any other state." Clyde Codified Ordinance 923.10(a). The ordinance further provides that a violation of the prohibition is a misdemeanor offense of the first degree.

{¶ 19} Ohioans for Concealed Carry, Inc., filed an action in August 2004 seeking an order striking down the ordinance and, further, seeking injunctive relief prohibiting Clyde from curtailing gun owners' rights. Both Ohioans for Concealed Carry, Inc., and Clyde moved for summary judgment. The trial court granted judgment in favor of Clyde, relying on the Sixth District Court of Appeals' decision in *Toledo v. Beatty*, 169 Ohio App.3d 502, 2006-Ohio-4638, 863 N.E.2d 1051. In *Beatty*, the Sixth District confronted a Toledo ordinance strikingly similar to the Clyde ordinance and held that R.C. 2923.126 was not a general law for home-rule purposes and therefore that the ordinance did not run afoul of Section 3 of the Home Rule Amendment, Article XVIII of the Ohio Constitution. The trial court, in applying the analysis in *Beatty* to the Clyde ordinance, reached the same conclusion and entered judgment accordingly.

{¶ 20} Ohioans for Concealed Carry appealed that determination to the Sandusky County Court of Appeals. While the case was on appellate review, the General Assembly enacted 2006 Sub.H.B. No. 347, creating R.C. 9.68, which emphasized the "fundamental individual right" to "keep and bear arms" and expressed the legislature's further desire "to provide uniform laws throughout the state regulating the ownership [and] possession * * * of firearms." R.C. 9.68(A). But the bill did more than merely restate the need for uniformity; R.C. 9.68(A) also provides that "[e]xcept as specifically provided by the United States Constitution, Ohio Constitution, state law, or federal law, a person, without

further license, * * * may own, possess, purchase, * * * or keep any firearm * * *." Simply put, the General Assembly, by enacting R.C. 9.68(A), gave persons in Ohio the right to carry a handgun unless federal or state law prohibits them from doing so. A municipal ordinance cannot infringe on that broad statutory right.

{¶ 21} The court of appeals used R.C. 9.68 to distinguish *Beatty*, which had been decided prior to the legislature's enactment of H.B. 347. R.C. 9.68(A), the court reasoned, "indicates the Ohio Legislature's clear intent that the concealed carry laws have general and uniform operation throughout Ohio." *Ohioans for Concealed Carry Inc. v. Clyde*, Sandusky App. Nos. S–06–039 and S–06–040, 2007-Ohio-1733, 2007 WL 1098347, ¶ 12. Because R.C. 9.68(A) precluded any law other than state or federal law from infringing on the right to carry arms, the law preempted Clyde Ordinance 2004–41. In accordance with its analysis, the appellate court reversed the judgment of the trial court and remanded the matter for entry of summary judgment in favor of Ohioans for Concealed Carry. Id. at ¶ 12–13.

{¶ 22} Clyde appealed that determination to this court, and we accepted the discretionary appeal. 115 Ohio St.3d 1408, 2007-Ohio-4884, 873 N.E.2d 1314.

## Article XVIII—The Home Rule Amendment

{¶ 23} The Home Rule Amendment to the Ohio Constitution, Article XVIII, permits municipalities "to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." Section 3, Article XVIII.

{¶ 24} A home-rule analysis presents a three-step process. *Am. Fin. Servs. Assn. v. Cleveland*, 112 Ohio St.3d 170, 2006-Ohio-6043, 858 N.E.2d 776, ¶ 23–24; see also *Mendenhall v. Akron*, 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d 255, ¶ 17. The first step is to determine whether the ordinance at issue " 'involves an exercise of local self-government or an exercise of local police power.' " *Am. Fin. Servs.* at ¶ 23, quoting *Twinsburg v. State Emp. Relations Bd.* (1988), 39 Ohio St.3d 226, 228, 530 N.E.2d 26, overruled on other grounds, *Rocky River v. State Emp. Relations Bd.* (1989), 43 Ohio St.3d 1, 20, 539 N.E.2d 103. If the ordinance is one relating solely to matters of self-government, "the analysis stops, because the Constitution authorizes a municipality to exercise all powers of local self-government within its jurisdiction." Id.

{¶ 25} The second step, which becomes necessary if the local ordinance is an exercise of police power, requires a review of the statute to determine whether it is a general law under our four-part test announced in *Canton v. State*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, syllabus. See also *Mendenhall*, 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d 255, ¶ 18. If the statute qualifies as a

general law under this test, the local ordinance must give way if it conflicts with the general law. Id.

{¶ 26} The final step in the analysis, therefore, is to determine whether the ordinance conflicts with the statute, i.e., "whether the ordinance permits or licenses that which the statute forbids * * *, and vice versa." *Struthers v. Sokol* (1923), 108 Ohio St. 263, 140 N.E. 519, at paragraph two of the syllabus; see also *Marich v. Bob Bennett Constr. Co.*, 116 Ohio St.3d 553, 2008-Ohio-92, 880 N.E.2d 906, ¶ 30.

{¶ 27} Clyde makes two separate arguments in support of its position that the ordinance is a constitutional exercise of its home-rule power. First, Clyde argues that regulation of its city parks is purely a matter of local self-government and, therefore, that the city is within its power to enact the legislation regardless of the applicable state statute. Second, Clyde argues that even if the ordinance is an exercise of its police power, R.C. 2923.126 is not a general law according to our *Canton* test, because it does not apply uniformly throughout the state. According to Clyde, the concealed-handgun law's multiple exceptions render uniform application impossible.

{¶ 28} Ohioans for Concealed Carry, on the other hand, maintains that the very language of the ordinance supports the conclusion that it is one of police power and that the regulation of firearm possession is a prime example of the exercise of that power. Ohioans for Concealed Carry also contends that the exceptions, though numerous, apply uniformly throughout the state and do not affect uniform application or enforcement, meaning that the statute constitutes a general law. Because the arguments presented require examination of multiple aspects of the home-rule analysis, we will conduct a complete examination of each facet of that test.

{¶ 29} Before beginning our analysis, however, we note that the appellate court held that R.C. 9.68 and 2923.126 preempted the Clyde ordinance. *Ohioans for Concealed Carry Inc.*, 2007-Ohio-1733, 2007 WL 1098347, ¶ 12. But as we stated in *Am. Fin.*, "[a] statement by the General Assembly of its intent to preempt a field of legislation is a statement of legislative intent" that may be considered in a home-rule analysis but does not dispose of the issue. *Am. Fin. Servs. Assn.*, 112 Ohio St.3d 170, 2006-Ohio-6043, 858 N.E.2d 776, ¶ 31. Accordingly, although R.C. 9.68 and 2923.126 embody the General Assembly's intent to occupy the field of handgun possession in Ohio, that intent "does not trump the constitutional authority of municipalities to enact legislation pursuant to the Home Rule Amendment, provided that the local legislation is not in conflict with general laws." Id. We therefore proceed to apply the test established in *Canton*.

## Local Self–Government v. Local Police Power

{¶ 30} The first step of the home-rule analysis, as noted, is to determine whether the ordinance is an exercise of police power or of local self-government. As this court recently noted, "[a]n ordinance created under the power of local self-government must relate 'solely to the government and administration of the internal affairs of the municipality.'" *Marich,* 116 Ohio St.3d 553, 2008-Ohio-92, 880 N.E.2d 906, ¶ 11, quoting *Beachwood v. Cuyahoga Cty. Bd. of Elections* (1958), 167 Ohio St. 369, 5 O.O.2d 6, 148 N.E.2d 921, paragraph one of the syllabus. Police-power ordinances, however, "protect the public health, safety, or morals, or the general welfare of the public." Id., citing *Downing v. Cook* (1982), 69 Ohio St.2d 149, 150, 23 O.O.3d 186, 431 N.E.2d 995.

{¶ 31} In *Marich,* we examined Norton Codified Ordinance 440.01, which "regulat[ed] the traffic that pass[ed] through the municipality by placing size requirements on the vehicles that may be driven there." Id. at ¶ 15. Emphasizing that the ordinance served "to protect drivers and pedestrians who might be traveling on those roads," we held that it embodied an exercise of the municipality's police power. Id. In reaching this holding, we reiterated that traffic ordinances "in general" constitute exercises of a municipality's police power because they operate to protect the public. Id. at ¶ 14; see also *Mendenhall,* 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d 255, ¶ 19.

{¶ 32} In *Ohio Assn. of Private Detective Agencies, Inc. v. N. Olmsted* (1992), 65 Ohio St.3d 242, 602 N.E.2d 1147, we considered North Olmsted Ordinance No. 79–27, which required security officers, private policemen, and similar workers to register with the local police department before commencing employment. There, we held that the ordinance constituted an exercise of the city's police power, reasoning that the ordinance imposed a penalty for noncompliance and that it could "hardly be argued to be a matter involving the structure or operation of a charter municipality." Id. at 244, 602 N.E.2d 1147.

{¶ 33} Furthermore, though we have never spoken directly on the subject of firearm regulation as an exercise of police power in the home-rule context, we stated in *Klein v. Leis,* 99 Ohio St.3d 537, 2003-Ohio-4779, 795 N.E.2d 633, ¶ 13, that concealed-weapon laws regulate "the manner in which weapons can be carried" and "involve[ ] the police power" of the enacting authority. The issue in *Klein* focused on the constitutionality of R.C. 2923.12—as opposed to a municipal ordinance—but the character of the law is the same regardless of the enacting entity.

{¶ 34} Several appellate courts, consistent with *Klein,* have held that local ordinances regulating firearm possession are police-power regulations. In *Cincinnati v. Baskin,* 158 Ohio App.3d 539, 2004-Ohio-5055, 817 N.E.2d 433, ¶ 8, overruled on other grounds, *Cincinnati v. Baskin,* 112 Ohio St.3d 279, 2006-Ohio-

6422, 859 N.E.2d 514, the Hamilton County Court of Appeals reaffirmed its earlier holding that Cincinnati Municipal Code 708–37, prohibiting the possession of certain semiautomatic firearms, was " 'a reasonable exercise of the city's police power to protect its citizens from violence stemming from the use of semiautomatic weapons.' " ¶ 8, quoting *Cincinnati v. Langan* (1994), 94 Ohio App.3d 22, 30, 640 N.E.2d 200. See also *Toledo v. Beatty,* 169 Ohio App.3d 502, 2006-Ohio-4638, 863 N.E.2d 1051, ¶ 45.

{¶ 35} The ordinance at issue here is an exercise of Clyde's police power. First, the ordinance does not "relate 'solely to the government and administration of the internal affairs of the municipality.' " *Marich,* 116 Ohio St.3d 553, 2008-Ohio-92, 880 N.E.2d 906, ¶ 11, quoting *Beachwood,* 167 Ohio St. 369, 5 O.O.2d 6, 148 N.E.2d 921, paragraph one of the syllabus. Like the traffic ordinances at issue in *Marich,* or the registration ordinance in *Ohio Assn. of Private Detective Agencies,* the Clyde ordinance "relates to public health and safety as well as the general welfare of the public." Id. at ¶ 14.

{¶ 36} Second, the ordinance imposes a penalty just as the ordinances presented in *Marich, Baskin, Mendenhall,* and *Ohio Assn. of Private Detective Agencies.* Here, violation of the Clyde ordinance results in a first-degree misdemeanor. But whether criminal or civil, an ordinance's penalty is aimed at curbing the regulated behavior for the general welfare of a municipality's citizens.

{¶ 37} Finally, the plain language of the ordinance undermines any argument that it is one relating to local self-government. Section 2 of the ordinance, for example, declares that it is "an emergency measure necessary for the preservation of the public peace, health and safety." While a municipality's description or classification of its enactments is not dispositive, Section 2 clearly supports our determination and provides further support for the nature of the ordinance. The ordinance is therefore an exercise of Clyde's police power, and we proceed to the next step in our analysis.

### General–Law Analysis

{¶ 38} We next consider whether R.C. 2923.126 is a general law. As we have stated, to be a general law, " 'a statute must (1) be part of a statewide and comprehensive legislative enactment, (2) apply to all parts of the state alike and operate uniformly throughout the state, (3) set forth police, sanitary, or similar regulations, rather than purport only to grant or limit legislative power of a municipal corporation to set forth police, sanitary, or similar regulations, and (4) prescribe a rule of conduct upon citizens generally.' " *Am. Fin. Servs. Assn.,* 112 Ohio St.3d 170, 2006-Ohio-6043, 858 N.E.2d 776, ¶ 32, quoting *Canton,* 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, syllabus.

{¶ 39} We proceed to evaluate the statute under each prong of the test.

## Statewide Comprehensive Legislative Enactment

{¶ 40} We look first to the language of the statute to determine whether it creates a statewide comprehensive legislative enactment. R.C. 2923.126(A), as a complement to the licensing statute, R.C. 2923.125, creates a right subject to specifically enumerated exceptions and, where selected by an owner, exceptions based on private property and employment. The General Assembly, in crafting the statute, indicated that it "wish[ed] to ensure uniformity throughout the state regarding * * * the authority granted to a person holding a license of that nature." Am.Sub.H.B. No. 12, Section 9, 150 Ohio Laws, Part II, 3390. The General Assembly reiterated the need for uniformity in R.C. 9.68(A), which represents an attempt by that body to nullify all municipal laws impeding uniform application of the state statute. "[T]he general assembly finds the need to provide uniform laws throughout the state regulating the ownership, *possession*, * * * *transport, storage, carrying*, * * * or other transfer of firearms." (Emphasis added.) R.C. 9.68(A).

{¶ 41} The General Assembly could not have been more direct in expressing its intent for statewide comprehensive handgun-possession laws. We therefore hold that R.C. 2923.126, which regulates handgun possession as part of the licensing procedure, is a statewide comprehensive legislative enactment.

## Uniform Application of the Statute

{¶ 42} R.C. 2923.126, as noted, creates a right to carry concealed handguns if the carrier has obtained a state-issued permit. The statute also creates multiple, specific exceptions to this right, R.C. 2923.126(B), and it grants private property owners the right to preclude licensed firearm carriers from privately owned property through the use of posted signs, R.C. 2923.126(C). Clyde contends that this system "creates a patchwork of inconsistent application within and beyond municipal boundaries throughout Ohio that completely defeats the stated purpose of providing uniformity with respect to where concealed carry licensees" may carry handguns.

{¶ 43} We rejected a similar argument in *Marich*. There, the Bob Bennett Construction Company argued that by granting power to cities over the regulation of street permits, "the General Assembly established a system that will inherently vary to some degree from jurisdiction to jurisdiction." *Marich*, 116 Ohio St.3d 553, 2008-Ohio-92, 880 N.E.2d 906, ¶ 22. Our decision reasoned, however, that "[t]his statutory framework applies to all parts of the state without exception, and the basic process is a uniform one." Id. at ¶ 24. We concluded in *Marich* that notwithstanding different applications or outcomes in varying jurisdictions, "mere differences in the interpretation and application of the statutory language are not enough to prevent a statute from applying to all parts of the state and operating uniformly throughout it." Id. at ¶ 25.

{¶ 44} Clyde relies on our decision in *Canton*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, in support of its position, but this reliance is misplaced. In *Canton*, we held that the statute did not constitute a general law, because it "effectively appl[ied] only in older areas of the state, i.e., cities where residential areas no longer have effective deed restrictions or no longer have active homeowner associations." Id. at ¶ 30.

{¶ 45} The statute at issue here, however, has no similar differential application. See *Marich*, 116 Ohio St.3d 553, 2008-Ohio-92, 880 N.E.2d 906, ¶ 23. It applies to all municipalities in the same fashion, subject to the same exceptions. None is singled out or treated differently, and the statute does not operate differently based on different locations in our state.

{¶ 46} Furthermore, the statute is not arbitrary in its differentiation between private and public property. See R.C. 2923.126(C). The distinction between private and public property merely reflects that private landowners can restrict access to their property in many ways public owners cannot. See, e.g., *Lloyd Corp. v. Tanner* (1972), 407 U.S. 551, 568, 92 S.Ct. 2219, 33 L.Ed.2d 131 (owners may regulate "general rights," including free speech, "on property privately owned and used nondiscriminatorily for private purposes only"). Some owners will permit licensed handgun carriers access to their premises. Some will not. That the law offers a choice to private landowners while offering none to municipalities does not render the statute arbitrary.

{¶ 47} There is a distinction between public and private property. A private landowner is the sole possessor of private property. *Eastwood Mall, Inc. v. Slanco* (1994), 68 Ohio St.3d 221, 626 N.E.2d 59; *Bresnik v. Beulah Park Ltd. Partnership, Inc.* (1993), 67 Ohio St.3d 302, 617 N.E.2d 1096. See also *Prune-Yard Shopping Ctr. v. Robins* (1980), 447 U.S. 74, 81, 100 S.Ct. 2035, 64 L.Ed.2d 741 (private property does not lose its private nature because it is open to the public). On the other hand, public property is owned by the taxpayers and is accessible to all. If there were no distinction made between public and private property as the dissent suggests, then a municipality could in the future choose to expand the prohibition from public parks to public sidewalks and roadways, and eventually to all public property.

{¶ 48} We therefore conclude that the public/private distinction does not affect the uniform application of this statute.

### Police, Sanitary, or Similar Regulation

{¶ 49} The third prong of the general-law test is whether the statute " 'set[s] forth police, sanitary, or similar regulations, rather than purport[s] only to grant or limit legislative power of a municipal corporation to set forth police, sanitary, or similar regulations.' " *Am. Fin. Servs. Assn.*, 112 Ohio St.3d 170, 2006-Ohio-

6043, 858 N.E.2d 776, ¶ 32, quoting *Canton,* 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, syllabus.

{¶ 50} R.C. 2923.126, like the Clyde ordinance, is an exercise of police power, because it "relates to public health and safety as well as the general welfare of the public." *Marich,* 116 Ohio St.3d 553, 2008-Ohio-92, 880 N.E.2d 906, ¶ 14. The statute, however, does more than merely prevent municipalities from enacting inconsistent handgun laws. It provides a program to foster proper, legal handgun ownership in this state. The statute therefore represents both an exercise of the state's police power and an attempt to limit legislative power of a municipal corporation to set forth police, sanitary, or similar regulations.

### Prescription of a Rule of Conduct for Citizens

{¶ 51} This inquiry requires little discussion. R.C. 2923.126 prescribes a rule of conduct for any citizen seeking to carry a concealed handgun. The right to keep and bear arms is a "fundamental individual right that predates the United States Constitution and Ohio Constitution," R.C. 9.68, but any citizen seeking to exercise this right must comply with the requirements of R.C. 2923.126.

{¶ 52} Accordingly, R.C. 2923.126 is a general law because it is "part of a statewide and comprehensive legislative enactment, (2) appl[ies] to all parts of the state alike and operate[s] uniformly throughout the state, (3) set[s] forth police, sanitary, or similar regulations, rather than purport[s] only to grant or limit legislative power of a municipal corporation to set forth police, sanitary, or similar regulations, and (4) prescribe[s] a rule of conduct upon citizens generally." *Canton v. State,* 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, syllabus.

### Conflict Analysis

{¶ 53} The final step in a home-rule analysis is the conflict test, which asks whether the ordinance prohibits that which the statute permits, or vice versa. See *Struthers,* 108 Ohio St. 263, 140 N.E. 519, at paragraph two of the syllabus. Here, the statute creates a right subject to specific exceptions that do not include public parks. Thus, the statute permits a licensed gun owner to carry a concealed handgun in a Clyde city park—indeed, in any municipal park across the state—the very conduct prohibited by the Clyde city ordinance. We therefore hold that the Clyde ordinance is in conflict with R.C. 2923.126.

### Conclusion

{¶ 54} Clyde City Ordinance No. 2004–41 is an exercise of the municipality's police power that conflicts with R.C. 2923.126, a general law. The ordinance is therefore unconstitutional. Accordingly, we affirm the judgment of the court of appeals.

Judgment affirmed.

LUNDBERG STRATTON, O'CONNOR, and CUPP, JJ., concur.

MOYER, C.J., and PFEIFER and LANZINGER, JJ., dissent.

---

**MOYER, C.J., dissenting.**

{¶ 55} The General Assembly's stated purpose in enacting R.C. 2923.126 was "to ensure uniformity throughout the state regarding * * * the authority granted to a person holding a [concealed-handgun] license." 2004 Am.Sub.H.B. No. 12, Section 9, 150 Ohio Laws, Part II, 3390. To effectuate this intent, R.C. 2923.126(A) offers the general rule that persons holding concealed-handgun licenses "may carry a concealed handgun anywhere in this state," subject to the numerous exceptions in subsections (B) and (C) of the statute.

{¶ 56} However, these exceptions generally treat private property owners (as well as private persons leasing public land) as a separate class, giving them the authority to decide in most circumstances whether concealed handguns will be allowed on their property. R.C. 2923.126(C)(3). This distinction creates arbitrary and unreasonable results, such that the statute does not operate uniformly throughout the state. I therefore respectfully dissent from the majority's decision to allow R.C. 2923.126 to take precedence over Clyde Ordinance 2004–41, which prohibits carrying a concealed handgun in Clyde city parks.

{¶ 57} Pursuant to Section 3 of the Home Rule Amendment, Article XVIII of the Ohio Constitution, a state statute will take precedence over a local ordinance only if "(1) the ordinance is in conflict with the statute, (2) the ordinance is an exercise of the police power, rather than of local self-government, and (3) the statute is a general law." *Canton v. State,* 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, ¶ 9. To qualify as a general law, "a statute must (1) be part of a statewide and comprehensive legislative enactment, (2) apply to all parts of the state alike and operate uniformly throughout the state, (3) set forth police, sanitary, or similar regulations, rather than purport only to grant or limit legislative power of a municipal corporation to set forth police, sanitary, or similar regulations, and (4) prescribe a rule of conduct upon citizens generally." Id. at syllabus. I agree that the first, third, and fourth factors apply to R.C. 2923.126 and do not dispute that it applies to all parts of the state alike.

{¶ 58} However, I do not agree that R.C. 2923.126 operates uniformly throughout the state. Given the exception for private property owners, the general rules on where a person may carry a concealed handgun fluctuate depending on who owns the property at issue; R.C. 2923.126 divides the state by creating different rules for public and private property. A statute that makes such a nonuniform classification can still qualify as a general law under the home-rule analysis, so long as the classification is not " 'arbitrary, unreasonable or capricious,' " but R.C.

2923.126 does not meet that standard. *Canton,* 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, ¶ 30, quoting *Garcia v. Siffrin Residential Assn.* (1980), 63 Ohio St.2d 259, 272, 17 O.O.3d 167, 407 N.E.2d 1369.

{¶ 59} In fact, this case provides a prime example of the types of arbitrary and unreasonable conduct discussed in *Canton.* Suppose that there are two parks in Clyde on opposite sides of the street; Park A is owned by the city, and Park B is owned by a private corporation.[1] At Park A, a person with the requisite license could carry a concealed handgun at the park, as the statute does not prohibit the carrying of a concealed handgun in public parks. The city is powerless to change this fact; concealed handguns must be allowed in the park, unless one of the limited exceptions applies (e.g., a school holds an event at the park, thereby invoking the exception for school safety zones in R.C. 2923.126(B)(2)). At Park B, a person's right to carry a concealed handgun depends on whether the owner of the park posts a sign forbidding the carrying of a concealed handgun. R.C. 2923.126(C)(3). The owner of the park can decide to forbid concealed handguns for any reason or no reason, and anyone who violates that decision could be charged with criminal trespass, a fourth-degree misdemeanor. If there are other privately owned parks in the area, the owners could each set his own rules.

{¶ 60} The single fact that Park A is publicly owned and Park B is privately owned changes the rules for whether concealed handguns will be allowed in the parks. The statute completely regulates public property while having essentially no effect on most forms of private property (with rare exceptions like R.C. 2923.126(B)(4), which prohibits concealed handguns when the private property has a liquor permit).

{¶ 61} This different treatment of public and private property is patently arbitrary and unreasonable; it affects one class of land solely on the basis of ownership, which has little to do with the relative safety of allowing concealed handguns on a particular type of property.[2] We held that a similarly selective

---

1. Appellant Clyde notes in its brief that the Whirlpool Corporation owns a private park in Clyde, with facilities similar to those in municipal parks, such as a swimming pool, tennis courts, and ball fields.

2. {¶ a} Although not a reason under our case law for concluding that R.C. 2923.126(A) violates the Ohio Constitution, one can only speculate about, indeed wonder, what statewide interest is served by a statute that nullifies and prohibits a reasoned conclusion by the elected representatives of local government that the presence of any number of handguns in a city park may be a threat to the security and safety of those using the park. Implementation of the state statute strikes a severe blow to the underlying principles of local self-government.

{¶ b} It is unfortunate that the passion of those who believe in the right of virtually any adult to carry a concealed weapon (subject to the statutory exceptions) has pushed aside the fundamental belief in Ohio that matters that directly affect the safety of a community may be determined by local government, where the voices of those citizens most directly affected may be heard and

enactment was not a general law in *Canton.* 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, ¶ 30 (determining that a statute was not a general law because it would in effect apply only in older areas of the state). I would come to the same result in this case, because the rules in R.C. 29231.26 for when and where concealed handguns can be carried apply only (and arbitrarily) to public property.

{¶ 62} The majority tries to sidestep these problems by citing our decision in *Marich v. Bob Bennett Constr. Co.,* 116 Ohio St.3d 553, 2008-Ohio-92, 880 N.E.2d 906. In *Marich,* we resolved a challenge to a statutory system that generally limited vehicles traveling on public roads to a certain width but allowed persons wishing to operate a wider vehicle within a municipality to apply for a permit from that municipality. Id. at ¶ 3. The permit statute, R.C. 4513.34(A), said that the municipality could issue a permit "upon application in writing and for good cause shown." The appellant there argued that different municipalities might interpret "good cause shown" in different ways and thus the statute would not operate uniformly throughout the state. *Marich* at ¶ 25.

{¶ 63} We answered this concern by holding that a statutory system that varies "to some degree from jurisdiction to jurisdiction" can still be a general law, as "mere differences in the interpretation and application of the statutory language are not enough to prevent a statute from applying to all parts of the state and operating uniformly throughout it." Id. at ¶ 22, 25. We acknowledged that different municipalities might interpret "good cause shown" to mean different things, but held that the basic process for receiving a permit was the same throughout the state. Id. at ¶ 25, 26.

{¶ 64} With R.C. 2923.126, though, the basic process for determining where concealed handguns may be carried varies greatly throughout the state because rulemaking for private property is generally left to the discretion of private landowners. By separating public and private property and leaving largely unfettered the discretion of private property owners to determine what limitations to place on their property, the General Assembly has created a system of restrictions that fluctuates much more dramatically across jurisdictions than the statutory scheme in *Marich,* which left open the possibility that the words "good cause shown" could have slightly different meanings in different parts of the state.

{¶ 65} Given the arbitrary and unreasonable distinction between public and private landowners, the fact that the law is subject to the will of private

---

considered. No one outside the city of Clyde, or perhaps the county of Sandusky, has any legitimate interest in the regulations placed upon the use of a city park in the municipality of Clyde. We can only hope that those who believe that dogs should run unleashed in city parks or those who believe that alcohol should be consumed in city parks are not able to convince a majority of the General Assembly of the merits of their cause.

landowners, and the fact that the statute fails to meet its stated objective of establishing uniformity in its designation of those places in which persons may carry concealed handguns, I would hold that R.C. 2923.126 is not a general law and that it therefore does not take precedence over Clyde Ordinance 2004-41.

LANZINGER, J., concurs in the foregoing opinion.

---

PFEIFER, J., dissenting.

{¶ 66} In *E. Liverpool v. Columbiana Cty. Budget Comm.*, 114 Ohio St.3d 133, 2007-Ohio-3759, 870 N.E.2d 705, this court recognized that a municipality may assert that a state statute violates the Equal Protection Clauses of the Ohio and United States Constitutions. I would hold that 2004 Am.Sub.H.B. No. 12 violates those Equal Protection Clauses. There is no rational basis to distinguish between private and public property owners in regard to their statutory ability to prevent persons from carrying firearms onto their property. Clyde owns its municipal park. Is there any reason why the owner of this property, where families gather and children play, should be forced to allow people with guns to enter, while the private owner of a public space such as a shopping mall can bar from entry any gun-carrying citizens?

---

Lydy & Moan, Daniel T. Ellis, and Frederick E. Kalmbach; and Firestone, Brehm, Hanson, Wolf & Young, L.L.P., and L. Kenneth Hanson III, for appellee Ohioans for Concealed Carry, Inc.

Schottenstein, Zox & Dunn Co., L.P.A., John C. McDonald, Stephen J. Smith, and Matthew T. Green; and Barry W. Bova, for appellant.

Nancy Hardin Rogers, Attorney General, William P. Marshall, Solicitor General, Stephen P. Carney, Deputy Solicitor, and Todd A. Nist, Assistant Solicitor, for intervening appellee Ohio Attorney General Nancy Hardin Rogers.

John F. Kostyo and Stephen P. Halbrook, urging affirmance for amicus curiae National Rifle Association of America, Inc.

Robert Triozzi, Director of Law, and Gary S. Singletary, Assistant Director of Law, urging reversal for amicus curiae the city of Cleveland.

Byron & Byron Co., L.P.A., and Stephen L. Byron; and John Gotherman, urging reversal for amici curiae Ohio Municipal League and the municipalities of Beachwood, Cincinnati, Dublin, Kettering, New Albany, Orange, Shaker Heights, and Toledo.